627 A.2d 257

Margaret **CASADAY**, Appellant,

v.

*CLEARFIELD COUNTY TAX CLAIM BUREAU*
and Pamela W. Gleichman.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 1993.

Decided June 18, 1993.

318

John C. Achille, for petitioner.

Kim C. Kesner, for appellee.

Before COLINS and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Margaret Casaday (Casaday) appeals from an order of the Court of Common Pleas of Clearfield County (trial court) which denied her petition to set aside tax sale on the basis

that she had ample actual knowledge of the sale conducted by the Clearfield County Tax Claim Bureau (bureau). We affirm.

Casaday, on March 5, 1991, acquired an interest in the subject property, a lot and hotel building located on North Brady Street, City of DuBois, Clearfield County. From May 19, 1989 through March 5, 1991, the premises were owned by General Pershing Hotel, Inc. (Pershing) which accumulated a substantial realty tax arrearage on the property. By deed dated March 5, 1991, but not recorded until June 20, 1991, Pershing conveyed the property to Casaday for consideration of $1.00. Until July, 1991, when the bureau became aware of the transfer, it treated the property as owned by Pershing, the record owner.

Earlier in 1991, before the execution or delivery of the deed, Casaday was in frequent communication with the bureau in an effort to negotiate an exoneration of the tax arrearage.

On two occasions the director of the bureau prepared written agreements to stay the tax sale scheduled for September 13, 1991. The first agreement was prepared but never signed. The second was signed by Casaday and the director on September 9, 1991. It provided for the debt to be paid in four installments over a period of nine months. The first installment was due on the date the agreement was executed.

The bureau conducted a tax sale of the subject property on September 13, 1991.

Casaday filed a petition to set aside the tax sale on October 16, 1991, alleging that she did not receive proper notice of the sale and that otherwise the procedure for the sale was defective or fraudulent. A hearing on the matter was held before the trial court on March 6, 1992. The trial court found that Casaday had ample actual knowledge of the tax sale and, accordingly, set aside the petition and affirmed the sale. Casaday appeals from that order.

On appeal, Casaday raises three issues for our review: (1) whether the bureau's failure to indicate the proper owner of the property on the posting or the advertising voids the sale even if the owner had actual notice; (2) whether the bureau

was bound by the written agreement to stay the sale; and (3) whether the lack of proper notice denied the owner of her due process rights.

Initially, we note that our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Chester County Tax Claim Bureau v. Griffith*, 113 Pa.Commonwealth Ct. 105, 536 A.2d 503 (1988). The bureau has the burden of showing compliance with all applicable notice provisions. *Id.* The notice requirements of section 602 of the Real Estate Tax Sale Law (Law)[1] may be summarized as follows:

1. Publication at least thirty days prior to the sale.
2. Notice by certified mail at least thirty days before the date of sale. If return receipt is not received, then similar notice must be given to each owner who failed to acknowledge by first class mail, proof of mailing, at least ten days prior to the sale.
3. Posting of the property at least ten days prior to the sale.

Performance of each of these three requirements, notice by publication, certified mail, and posting, is required for a tax sale to be valid. *Geier v. Tax Claim Bureau of Schuylkill County*, 131 Pa.Commonwealth Ct. 321, 570 A.2d 134 (1990).

Here, Casaday argues that the publication and posting requirements were not met because the proper owner's name was not indicated in either of the documents used to fulfill these requirements. While conceding that actual notice was effectuated through the oral communications Casaday had with the bureau, Casaday relies on *Hicks v. Och*, 17 Pa.Commonwealth Ct. 190, 331 A.2d 219 (1975), where this court invalidated a sale which was not publicized in the name of the present owner as required by the Law, notwithstanding the actual notice of the present owner. We reasoned that "probably the posted notice and most certainly the advertisement notice are aimed at a far greater range of interested parties

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602.

than merely the owner to whom the registered mail notice is directed." *Hicks,* 17 Pa.Commonwealth Ct. at 193, 331 A.2d at 220. Thus, by nature, greater specificity is necessary in fulfilling the requirements of publication and posting due to the audience these methods endeavor to reach.

The bureau concedes that the posting and publication requirements were not literally adhered to because these notices utilized the record and assessed owner's name instead of Casaday's, even though she became the record owner of the property more than six weeks prior to the posting and publication. However, notice via certified mail to Pershing was proper, the bureau argues, because the transfer of property to Casaday was not recorded until two days after the notice was mailed.

Moreover, the bureau maintains, even if the formal requirements for notice were not adhered to in some instances through a course of dealings with the bureau, Casaday obtained ample actual knowledge of the fact, date and circumstance of the sale in time to prevent the sale and/or protect her due process rights. We agree.

Written notice of the sale was sent by certified mail to Pershing on June 18, 1991 (transfer of title to Casaday was not recorded until June 20, 1991). Notice was also posted on the property on August 5, 1991, and published that same week, although again in the name of Pershing, the assessed owner for the tax years in question. A bookkeeper for the bureau, Janice Bell, testified that Casaday telephoned the bureau the morning of the sale and asked whether the property had been sold yet. Casaday was advised that the sale was scheduled to occur later that day at 1:00 p.m. Casaday called again that afternoon only to be advised that the property was sold to Gleichman.

Caselaw supports the presumption that when actual notice is established, the formal requirements of section 602 need not be perfectly met. *Hass Appeal,* 96 Pa.Commonwealth Ct. 452, 507 A.2d 1294 (1986); *Northrup v. Pennsylvania Game Commission,* 73 Pa.Commonwealth Ct. 389, 458 A.2d 308 (1983);

*C. Everett, Inc. v. Ayres,* 22 Pa.Commonwealth Ct. 422, 349 A.2d 514 (1975).

█ Our review of the record indicates that Casaday did indeed receive actual notice of the tax delinquency and scheduled sale of the property on several occasions in sufficient time for her to react to prevent the sale or protect her interests. It is clear that at least from the Spring of 1991, prior to her purchase of the property, Casaday was aware of the tax delinquency. From that period onward she was in frequent communication with the bureau attempting to negotiate a satisfaction of the arrearage. The director of the bureau testified that during the course of her contacts with Casaday prior to the sale, she discussed the exact date of the sale with Casaday at least five times. Moreover, on the date of the sale, Casaday, with apparent full knowledge of the scheduled events, called the bureau's office twice inquiring about the status of the sale. The totality of this evidence, all unrebutted, establishes that Casaday had actual knowledge of the sale prior to its occurrence.

█ Next it is necessary to examine the bureau's defense that this actual knowledge is sufficient to overcome deficiencies in the formal notice requirements. In *Hass,* where the record owner did not receive personal service notice or certified mail notice but was found to have notice in fact of the date of the sale, this court held that the owner had adequate notice and her rights were preserved such that the sale was validated. We reasoned that strict compliance is necessary to guard against a deprivation of property without due process of law. The owner must be afforded the opportunity to present their objections. However, recognizing the need for flexibility in situations such as the present case, we wrote: "But to require strict compliance where, as here, owner had notice, in fact is to exalt form over substance, and ignores the purposes of the requirement." *Hass,* 96 Pa.Commonwealth Ct. at 456, 507 A.2d at 1296.

We conclude that sufficient evidence exists on the record to establish that Casaday had actual knowledge of the sale, and that the lack of formal adherence to the notice requirements

of section 602 does not invalidate the sale or compromise Casaday's due process rights.

■   Finally, we address Casaday's alternative argument that the agreement to stay the sale which she signed with the bureau on September 9, 1991 should have halted the sale four days later.  We disagree.

Section 603 of the Law[2] allows for the owner of the property, at the discretion of the bureau and prior to the actual sale, to

> enter into an agreement, in writing, with the bureau to stay the sale of the property *upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments* filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than than three (3) installments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each installment shall be paid, and the amount of each install-ment.  So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.  (Emphasis added.)

Pursuant to this statute, the bureau allowed Casaday to enter into an agreement to stay the sale.  Said agreement was executed by both the bureau and Casaday on September 9, 1991.  The agreement clearly sets forth the statutory require-ment that 25% of the total amount due on all tax claims and judgments was due in four equal installments commencing with the execution of the agreement on September 9, 1991. Correctly adhering to the mandate of section 603, testimony by the director of the bureau indicates that it is the practice of the bureau to hold these agreements valid only when the initial installment payment is received.  No such payment was received from Casaday on the date she signed the agreement nor prior to the date of the scheduled sale; consequently, the sale was permitted to proceed.

**2.**   72 P.S. § 5860.603.

Casaday argues that the agreement is valid, and should have operated to stay the sale, because there is no requirement for an initial payment to be made for the sale to be stayed. Nor does the agreement so indicate, Casaday contends. To the contrary, section 603 clearly sets forth the requirements to be met if the bureau permits the owner of tax delinquent property to enter into an agreement to stay a scheduled public tax sale. Among those requirements is specific language making the agreement valid only upon payment of the first of four installments.

The record indicates that Casaday did not make an initial payment at the time of the agreement as required by section 603. Casaday was in contemporaneous negotiations with Gleichman and Company (Gleichman) to buy the property. The director of the bureau testified she believed Casaday merely wanted the written agreement to present to Gleichman in hopes that Gleichman would advance the initial payment. Since no initial payment was received, the bureau permitted the tax sale to proceed on September 13, 1991.

Since the required initial payment was never received by the bureau in the present matter, the agreement is not in compliance with section 603, rendering it invalid. The bureau properly disregarded the agreement and proceeded with the sale of the property. Casaday cannot therefore rely on the default provisions contained in an invalid agreement to argue that the bureau had a duty to notify her of her obligation to pay the first 25% installment prior to the sale. The agreement was never made valid because Casaday failed to make a contemporaneous payment of the first installment when she executed the agreement, as required by section 603.

Accordingly, the order of the trial court denying the petition to set aside tax sale is affirmed.

## ORDER

NOW, this 18th day of June, 1993, the order of the Court of Common Pleas of Clearfield County, dated March 18, 1992, at Misc. Docket 10, page 17, is hereby affirmed.