**In re UPSET SALE TAX CLAIM BUREAU OF WAYNE COUNTY HELD SEPTEMBER 12, 1994.**

**Appeal of Martha SANDY.**

**Appeal of David J. PITTI and Mark Albert, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided March 6, 1996.

Jeffrey S. Treat, for Appellants.

Warren Schloesser, for Appellee, Wayne County Tax Claim Bureau.

Gerald J. Butler, for Appellee, Martha Sandy.

Before FRIEDMAN and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

David Pitti and Mark Albert appeal from an order of the Court of Common Pleas of Wayne County (trial court) granting Martha Sandy's (Sandy) petition objecting and excepting to the tax sale of her real property on September 12, 1994 and declaring the tax sale null and void. We reverse.

The trial court did not set forth specific facts in its opinion; therefore, the following undisputed facts are taken from the record filed in this matter. Sandy was the owner of a parcel of real property located in Wayne Township. The property was improved with a dwelling house located thereon.

Sandy became delinquent in the payment of the property taxes and being aware of the overdue taxes, she sent a letter to the Wayne County Tax Claim Bureau (bureau) on March 28, 1994. Therein, Sandy requested as follows: "Can it be possible for me to make arrangment [sic] to pay 74.00 per month until I catch up. If possible could this be resolved by mail." Original Record (R.), Petitioner's Exhibit 1.

By written message dated March 29, 1994, the bureau acknowledged receipt of Sandy's March 28, 1994 letter and informed Sandy that it would allow her to make the *monthly* payment of $74.00 in order to get her taxes paid. R., Petitioner's Exhibit 2 (emphasis in original). The bureau further informed Sandy that: (1) her first payment was due in April; (2) it must be paid by money order or certified check; and (3) she must have at least one-half of the 1992 taxes paid prior to June 30, 1994 to avoid additional charges. *Id.*

Sandy failed to make the agreed-upon monthly payments of $74.00. Thereafter, Sandy received from the bureau a notice of public tax sale informing Sandy that her property was to be sold at 10:00 a.m. on September 12, 1994. The notice of public tax sale notified Sandy that the sale could be stayed at the option of the bureau if the owner on or before the actual sale date, entered into an agreement with the bureau to pay the taxes and costs owing on the property in installments in the manner provided by law.

On September 9, 1994, Sandy telephoned the bureau to ascertain what action she needed to take to stop the sale of her property. An employee of the bureau, Cheryl Sikes, informed Sandy that she had to pay $230.00 before the date of the sale. Consequently, on September 9, 1994, Sandy obtained a money order in the amount of $230.00 and immediately mailed the payment via certified mail, return receipt requested, to the bureau.

The subject property was sold as scheduled on September 12, 1994 to Pitti and Albert. On September 15, 1994, the bureau received Sandy's payment in the amount of $230.00.

On November 15, 1994, Sandy filed a petition excepting to the tax sale. In support of her petition, Sandy averred that an agreement was entered into with the bureau pursuant to the provisions of section 603 of the Real Estate Tax Sale Law (Law)[1] and that the September 12, 1994 sale was in violation of that agreement.

After a hearing on the petition, the trial court granted Sandy's petition and declared the tax sale of the subject property null and void. In an opinion in support of its order, the trial court found that Sandy and the bureau did enter into an agreement to stay the sale pursuant to section 603 of the Law. This agreement, the trial court found, consisted of the exchange of the letters dated March 28, 1994 and March 29, 1994 between Sandy and the bureau. The trial court determined further that the agreement became valid on September 9, 1994, when Sandy purchased the $230.00 money order and mailed the money order to the bureau via certified mail, return receipt requested.

The trial court found that Sandy's utilization of the mail was proper because the record indicated that previous to September 9, 1994, the parties had established a method of contact by mail. The trial court opined that Sandy's actions on September 9, 1994, were in keeping with this method. This appeal by Pitti and Albert followed.

■ Initially, we note that our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993).

Pitti and Albert[2] raise the following two issues on appeal: (1) Whether an exchange of letters between Sandy and the bureau creates an agreement to stay sale pursuant to section 603 of the Law where a partial payment of less than twenty-five percent (25%) of the amount due on all tax claims was not received by the bureau until three days after the sale; and (2) Whether the trial court erred when it found that partial payment occurred on the mailing date of September 9, 1994, when Sandy specifically acknowledged during testimony that she was advised by the

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.603. Section 603 governs the removal of property from sale and agreements to stay a sale.

2. The bureau has filed a brief as appellee in this matter aligning itself with the position of Pitti and Albert that the tax sale should not have been declared void.

bureau that payment was due before the sale date and the tax sale would be stayed "as long as it got there" before the sale. We will address these issues together.

Section 603 of the Law allows for the owner of the subject property, at the discretion of the bureau and prior to the actual sale, to

enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as the agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.

■ Pitti and Albert argue that the statutory requirements of section 603 of the Law were not satisfied in this matter; therefore, the tax sale of Sandy's property was valid. In response, Sandy argues that there was a valid agreement effective September 9, 1994, the date of the mailing of her payment, because the parties had agreed implicitly through the exchange of letters to deal by mail.

While this court sympathizes with Sandy's position, a review of the record in this case reveals that the statutory requirements of section 603 of the Law were not satisfied. Accordingly, the trial court erred in granting Sandy's petition and declaring the tax sale of Sandy's property null and void.

Section 603 sets forth specific requirements regarding an agreement to stay a tax sale. Section 603 requires, *prior to the actual sale*, a written agreement between the property owner and the bureau to stay the sale of the property upon the payment of 25% of the amount due on all tax claims and tax judgments and an agreement therein to pay the balance of said claims and judgments in not more than three installments all within one year of the date of said agreement.

In the present case, there was no pending sale at the time the letters were exchanged between Sandy and the bureau in March 1994. Therefore, the exchange of letters between Sandy and the bureau in March 1994 were not in contemplation of satisfying the requirements of a section 603 agreement to stay a tax sale of the subject property. The letters merely evidence the bureau's acceptance of Sandy's proposal to pay $74.00 per month towards the overdue taxes. Moreover, the bureau's March 29, 1994 message letter clearly informs Sandy that at least one-half of the 1992 taxes had to be paid prior to June 30, 1994 to avoid additional charges. When Sandy failed to comply and make the first agreed-upon payment of $74.00 in April 1994 or to pay one half of the 1992 taxes prior to June 30, 1994, the bureau properly scheduled the property for sale.

Further, contrary to the trial court's conclusion, the purchase and deposit in the mail by Sandy on September 9, 1994 after her telephone conversation with the bureau's employee did not validate any contemplated agreement between the parties to stay the tax sale. The director of the bureau, Judith Knash, testified that Sandy was informed on September 9, 1994 that the bureau had to receive $230.00 by certified check or money order before the scheduled tax sale on September 12, 1994. Reproduced Record (R.R.) at 31a; 34a. Ms. Knash also testified that if the bureau had received Sandy's $230.00 payment prior to the sale, Sandy's property would not have been sold on September 12, 1994. *Id.* at 33a.

Ms. Knash testified further that the normal procedure when a taxpayer like Sandy cannot make payment of delinquent taxes in full is for the taxpayer and the bureau to enter into a signed agreement entitled Stay of Sale Agreement allowing for installments over the period of one year. Ms. Knash testified that the first payment had to be at least one fourth of all delinquent taxes. *Id.*

Sandy testified that the bureau's employee, Cheryl Sikes, informed her that if she got the

$230.00 to the bureau before the sale, the bureau would stop the sale. R.R. at 43a. When questioned as to why she did not take the $230.00 payment to the bureau instead of mailing it, Sandy answered that she "was very sick for those couple of weeks and I just didn't do it and I don't know why." R.R. at 45a. Sandy testified further that she was aware that she had to sign an agreement. R.R. at 44a.

Accordingly, the record shows that the normal procedure utilized by the bureau to stay a tax sale was the receipt of at least 25% of all delinquent taxes prior to the actual sale and the signing of an agreement to stay the sale. Moreover, Sandy was aware that the $230.00 payment had to be received by the bureau prior to the tax sale and that she had to sign an agreement.

In *Casaday*, a taxpayer and the bureau entered into an agreement to stay the sale of the taxpayer's property. The agreement clearly set forth the statutory requirement that 25% of the total amount due on all tax claims and judgments was due in four equal installments commencing with the execution of the agreement. However, the taxpayer failed to make the required initial payment prior to the date of the scheduled sale; consequently, the sale was permitted to proceed.

On appeal, this court rejected the taxpayer's argument that the agreement was valid, and should have operated to stay the sale, because there is no requirement for an initial payment to be made for the sale to be stayed. This court pointed out that the specific language of section 603 makes an agreement valid only upon payment of the first of four installments. *Casaday*, 627 A.2d at 260. Accordingly, we held that the agreement to stay the tax sale was invalid since the required initial payment was never received by the bureau prior to the sale as mandated by section 603. *Id.*

█ Likewise in the present case, even if the exchange of letters between Sandy and the bureau constitute an agreement pursuant to section 603, the bureau did not receive the required payment of $230.00 prior to the actual sale. The fact that Sandy and the bureau had corresponded through the mail prior to the date of the sale does not negate the statutory requirement of section 603 requiring an initial payment of 25% of the amount due *prior to the actual sale.* To hold otherwise would call into question the finality of a public tax sale.

Accordingly, the order of the trial court granting Sandy's petition and declaring the tax sale of the subject property null and void is reversed.

### ORDER

NOW, this 6th day of March, 1996, the order of the Court of Common Pleas of Wayne County, dated March 23, 1995, at No. 451 Civil 1994, is reversed.