In re TAX SALE OF 28.8525 ACRES IN MIDDLECREEK TOWNSHIP TAX SALE NO. 12434.

**Appeal of Jacob R. MOGNET and Beverly J. Mognet, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 1996.

Decided Jan. 29, 1997.

---

Joseph B. Policicchio, Somerset, for appellants.

William R. Carroll, Somerset, for intervenor, Wayne J. Beeghly.

Before COLINS, President Judge, and DOYLE, PELLEGRINI, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

Jacob R. Mognet and Beverly J. Mognet (the Mognets) appeal from an order of the Court of Common Pleas of Somerset County (trial court) overruling their exceptions to tax sale of real estate. We reverse.

The Mognets are the record owners of three taxable properties located in Middlecreek Township, Somerset County, Pennsylvania. The property which is the subject of the instant appeal is a 28.8525 acre parcel. On September 12, 1994, the subject property was exposed to public sale for the nonpayment of 1992 real estate taxes. The property was purchased by Wayne J. Beeghly, who was permitted by the trial court to intervene in this action.

The Mognets filed exceptions to the tax sale of the subject property alleging, *inter alia*, that they never received proper notice under section 602 of the Real Estate Tax Sale Law (Law)[1] or had any actual knowledge that the property was to be exposed to public sale for nonpayment of taxes. The Mognets alleged that the notices of public sale sent by certified mail[2] were signed for by Mrs. Mognet not Mr. Mognet; therefore, substantial compliance with section 602(e)(2) of the Law was lacking.[3] The Mognets also alleged that notice of the pending sale was not properly posted on the subject property at least ten (10) days prior to the sale as required by section 602(e)(3) of the Law.

A hearing was held regarding the Mognets exceptions to the tax sale during which the parties stipulated that notice by publication was completed in accordance with section 602(a) of the Law.[4] The parties also stipulated that the property was not posted.

Despite the stipulation that the subject property was not posted, the trial court, rely-

1. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602. Section 602 of the Law sets forth three types of notice which are required for a valid tax sale: publication, certified mail and posting.

2. Section 602(e)(1) provides that notice shall be given by the tax bureau:

    (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
    72 P.S. § 5860.602(e)(1).

3. Section 602(e)(2) of the Law provides:

    (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
    72 P.S. § 5860.602(e)(2).

4. Section 602(a) provides that the tax bureau shall give notice by publication at least thirty (30) days prior to any scheduled sale in two (2) newspapers of general circulation in the county and once in the legal journal, if any, designated by the court for the publication of legal notices. 72 P.S. § 5860.602(a).

ing on this court's decision in *Casaday v. Clearfield County Tax Claim Bureau*, 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993), held that the formal requirements of section 602 may be excused where the record establishes that the record owners had actual notice of the sale. Thus the trial court determined, based on the public sale notices received by Mrs. Mognet and Mr. Mognet's admission that he was aware of the pending sale, that the Mognets received actual notice of the pending sale. Therefore, the trial court sustained the tax sale and denied the Mognets' exceptions. This appeal followed.

■ Initially, we note that this court's scope of review is limited to determining whether the trial court abused its discretion, rendered a decision with lack of supporting evidence, or clearly erred as a matter of law. *Chester County Tax Claim Bureau v. Griffith*, 113 Pa.Cmwlth. 105, 536 A.2d 503 (1988).

On appeal herein, the Mognets present the issue of whether the trial court erred in concluding that compliance with the notice requirements of section 602 of the Law could be excused in the instant case and in concluding that the Mognets received actual notice of the tax sale.

■ The tax claim bureau has the burden of showing compliance with all applicable notice provisions. *Id.* Performance of each of the three requirements found in section 602, notice by publication, certified mail, and posting is required for a tax sale to be valid; if any is defective, the sale is void. *In re Upset Price Tax Sale of September 25, 1989*, 150 Pa.Cmwlth. 191, 615 A.2d 870 (1992).

■ Based on the mandatory notice provisions found in section 602 of the Law, we hold herein that the trial court erred in upholding the tax sale of the subject property. It is undisputed that the subject proper-

ty in this matter was not posted. Section 602(e)(3) specifically states that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3). This court has recently held that the word "shall", as used in section 602(e)(3) "imposes a mandatory duty to post a notice of the tax sale on the property subject to the sale." *Ganzer v. Erie County Tax Claim Bureau*, 163 Pa.Cmwlth. 522, 641 A.2d 1261, *petition for allowance of appeal denied*, 540 Pa. 587, 655 A.2d 517 (1994).

■ Moreover, we do not believe that this court's holding in *Casaday* may be read to excuse the failure of a tax bureau to comply with the mandatory posting requirement of section 602. To guard against the deprivation of property without due process of law, there must be strict compliance with the notice provisions of section 602. *In re Upset Price Tax Sale of September 10, 1990*, 147 Pa.Cmwlth. 52, 606 A.2d 1255 (1992).

In *Casaday*, this court held that the totality of the evidence established that the owner of the property, Margaret Casaday, had actual knowledge of the sale prior to its occurrence. *Casaday*, 627 A.2d at 259. Therefore, the lack of formal adherence to the notice requirements of section 602 did not invalidate the sale or compromise Casaday's due process rights.[5] *Id.* at 259–60. We note however, that this court in *Casaday* did not hold that the mandatory requirement of section 602(e)(3), that the property be posted, is automatically excused if the record owner has actual knowledge of the pending sale. To the contrary, this court has held that the other forms of required notice under the Law notwithstanding, the defect of failing to post the property is sufficient standing alone to render a sale void. *See In re Upset Price Tax Sale of September 25, 1989*. To hold

5. We note further that the property scheduled for sale in *Casaday*, was posted with a notice of the pending sale as required by section 602(e)(3) albeit in the name of the assessed owner for the tax years in question and not in the name of the record owner at the time the property was scheduled for sale. In *Casaday*, the owner of the subject property, Pershing Hotel, Inc., recorded a deed on June 20, 1991, transferring ownership to Margaret Casaday. Two days earlier, on June 18, 1991, a written notice of the pending tax sale was sent by certified mail to Pershing, the assessed owner for the tax years in question. On August 5, 1991, the subject property was posted with a notice of the pending sale again in the name of Pershing. Beginning in early 1991 and continuing until September 13, 1991, the date of the tax sale, Casaday attempted to negotiate a satisfaction of the arrearage, was informed five times of the date of the sale, and contacted the tax bureau's office twice on the day of the sale inquiring about the status of the sale.

otherwise in the present case would also undermine the purpose for public posting of property. As stated by this court:

> Not only does public posting assist in informing a taxpayer that his or her property is to be exposed at tax sale, ... it serves the additional purpose of notifying others whose interest may be affected by the sale such as mortgage and other lien holders. Posting also serves to notify the public at large that the property is going to be offered at tax sale. This increases the number of bidders for the property, aiding in the likelihood that the taxing bodies will receive the taxes owed, as well as making the sale fair to the delinquent taxpayer so that the property is sold for the highest amount possible so that the delinquent taxpayer may not be subject to any deficiency or, if the bid is over the amount of taxes owed, can receive any excess.

*In re Upset Tax Sale of September 10, 1990,* 606 A.2d at 1258.

Accordingly, the order of the trial court overruling the Mognets' exceptions to the tax sale of real estate consisting of a 28.8525 acre parcel is reversed.

### ORDER

AND NOW, this 29th day of January, 1997, the order of the Court of Common Pleas of Somerset County, dated January 12, 1996, at No. 89 Misc.1994, is reversed.

FRIEDMAN, Judge, concurring.

I concur in the result. However, because I do not believe that the Mognets actually knew that there would be a real estate tax sale, I believe it is unnecessary to discuss whether actual knowledge excuses the failure of a tax bureau to comply with the formal notice requirements of section 602(e) of the Real Estate Tax Sale Law (Law).[1]

The Mognets own three taxable properties in Middlecreek Township, two of which had been returned for non-payment of taxes. As a result, Mr. Mognet went to the Tax Claim Bureau (Bureau) and entered into a payment agreement. (R.R. at A.) However, Mr. Mog-

net was not aware that the payment agreement covered only one of the two parcels. In June 1994, when Mr. Mognet became aware of the pending tax sale, he went to the Bureau and paid off the balance due on the agreement. (Trial court's op. at 3.) Mr. Mognet testified as follows:

> I also asked the lady if that's all I owed and she said that I was clear. And that's the reason I never proceeded with anything any further.
>
> . . . .
>
> Q Did you believe that when you made that final payment that the sale scheduled for September 12, 1994, would be canceled?
>
> A I sure did.

(Hearing of July 10, 1995, N.T. at 20, 22.) It is apparent to me that the Mognets did *not* have actual knowledge that there would be a tax sale for his property.

Nancy Sanner, the elected tax collector of Middlecreek Township, *and* Mr. Mognet's sister, testified that she called the Bureau after she saw the tax sale advertisement in the newspaper. Jackie Eller, an employee at the Bureau, told Sanner that the Mognets had paid their real estate taxes. (Trial court op. at 4–5.)

The reason why the Mognets, Sanner and Eller erroneously believed that the Mognets had taken care of their real estate taxes is because the Bureau's computer system tracks parcels of land by the *full* owner name(s). Indeed, the Bureau's computer shows that "Mognet, Jacob R. and Beverly," own one of the properties here and "Mognet, Jacob R. and Beverly J." own the other. (Hearing of July 10, 1995, N.T. at 31–32.) Because Mrs. Mognet's middle initial is included in the owner name for the second property, the computer believes, in error, that the properties have different owners.

Thus, when Mr. Mognet went to the Bureau to set up a payment plan for his real estate taxes, the Bureau employee, relying on the computer, only included the taxes due on one of the properties in setting up the plan. When Sanner telephoned the Bureau

---

1. Section 602(e) of the Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602.

to ask about Mr. Mognet's taxes, Eller, again relying on the computer, told her that the Mognets had paid their taxes.

I do not believe that Mr. Mognet had an obligation to understand how the Bureau's computer system is designed and to know that, because the computer tracked property owners by their *full* name(s) and because someone at the Bureau had entered his wife's middle initial on one property and not the other, his payment plan only covered one property. Even if Mr. Mognet had such a duty, one could only argue that the Mognets *should have known* that there would be a tax sale. However, we are concerned here with *actual* knowledge.

Because I do not believe that the Mognets had *actual* knowledge of the tax sale, I would reverse.

DOYLE and PELLEGRINI, JJ., join in this concurring opinion.