IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Francis and Mary Dupas,                    :
H, B and 48 acres surface, Bell                   :
Township, Clearfield County,                      :
Pennsylvania, known as                            :
Map No. D12-000-00004, Control No.                :
10201255                                          :
                                                  :   No. 56 C.D. 2015
Appeal of: Floyd Dupas                            :   Submitted: September 17, 2015


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: October 7, 2015


        Floyd Dupas (Dupas) appeals from the Clearfield County Common Pleas
Court's (trial court) December 17, 2014 order dismissing his Petition to Set Aside
and/or Strike Tax Sale (Petition). The issues for this Court's review are: (1) whether
the trial court erred by holding that tax sale notice was given in accordance with the
Real Estate Tax Sale Law (Tax Sale Law);[1] and (2) whether the trial court erred by
holding that the Clearfield County Tax Claim Bureau (Bureau) exercised reasonable
efforts to discover Dupas' whereabouts. After review, we affirm.

        Dupas' parents, Francis B. and Mary Dupas (Owners), owned real
property consisting of a house, barn and 48 acres located in Bell Township, Clearfield
County, Pennsylvania (Property). At the time the Property was conveyed to the
Owners in 1969, their recorded address was 52 Woodcliff Avenue, Little Falls, New
Jersey. See Certified Record (C.R.), Notes of Testimony, November 26, 2014 (N.T.)

_____

[1] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101 – 5860.803.

Ex. A. Mary Dupas died in 1974. Francis Dupas died in 2001. Despite that a New Jersey attorney was retained to administer their estates, there was no record in Clearfield County that the Owners were deceased.[2]

The Property's 2012 real estate tax bill was forwarded to the Bureau as unpaid.[3] On March 7, 2013, the Bureau sent a pre-Notice of Return and Tax Claim to Owners in care of Dupas at Dupas' 56 Woodcliff Avenue, Little Falls, New Jersey address.[4] *See* C.R. N.T. Ex. D; *see also* Reproduced Record (R.R.) at 7a-8a. The pre-Notice was not returned by the United States Postal Service (USPS) as undelivered. On April 9, 2013, a Notice of Return and Claim was mailed by certified mail to the Owners in care of Dupas at the 56 Woodcliff Avenue, Little Falls, New Jersey address, which stated that if the taxes were not paid by December 31, 2013 and no exceptions are filed, the claim would become absolute and the Property would be exposed for tax sale. *See* C.R. N.T. Ex. E; *see also* R.R. at 10a. The Notice of Return and Claim was returned unsigned.

On May 9, 2014, a Notice of Public Tax Sale, stating that the Property was about to be sold without consent was sent certified mail, restricted delivery, to Dupas on the Owners' behalf at the 56 Woodcliff Avenue, Little Falls, New Jersey address. *See* C.R. N.T. Ex. F; *see also* R.R. at 11a. The certified mailing card reflected that "A.D. Keay" accepted the notice as agent for "F. Dupas" on May 12, 2014. *Id.* On August 5, 2014, the Bureau advertised the Property's impending sale in "The Progress" and "The Courier-Express." *See* C.R. N.T. Exs. I, J; *see also* R.R. at 13a. The Bureau also advertised the Property's sale in the Clearfield County Legal Journal on August 8, 2014. *See* C.R. N.T. Ex. K; *see also* R.R. at 13a.

---

[2] Owners had four children. Only Dupas and his brother Frank Dupas are currently living.

[3] The upset price also included tax delinquencies for the 2013 tax year. *See* Reproduced Record (R.R.) at 4a-5a.

[4] Dupas has resided at 56 Woodcliff Avenue, Little Falls, New Jersey since 1972.

On August 20, 2014, the Bureau sent by first class mail to Dupas for the Owners at the 56 Woodcliff Avenue, Little Falls, New Jersey address a 10-Day Notice of Public Tax Sale reflecting that the tax sale would take place on September 12, 2014 at 9:00 a.m. *See* C.R. N.T. Ex. H; *see also* R.R. at 12a-13a. The 10-Day Notice was not returned by the USPS as undelivered. *See* R.R. at 13a. On August 28, 2014, the Property was posted with the Notice of Tax Sale, stating that the last day to make full payment to halt the sale was September 11, 2014. *See* C.R. N.T. Ex. G; *see also* R.R. at 11a-12a. On September 12, 2014, the Property was sold at tax sale to Heather Kunselman (Kunselman). On October 23, 2014, Dupas timely filed the Petition. The trial court held a hearing on November 26, 2014. On December 17, 2014, the trial court dismissed the Petition and confirmed the Property's sale to Kunselman. Dupas appealed to this Court.[5]

Dupas first argues that the trial erred by holding that notice of the sale was given in accordance with the Tax Sale Law. Specifically, he contends that Property's reputed owner never received notice that the tax sale was to occur. We disagree.

"Generally, tax sales are presumed valid." *Barylak v. Montgomery Cnty. Tax Claim Bureau*, 74 A.3d 414, 416 (Pa. Cmwlth. 2013). This Court has held that "the only acceptable basis for setting aside a tax sale on exceptions is a finding by a court that the proceedings of the [B]ureau involved in the sale were irregular or illegal." *In re Sale of Real Estate by Venango County Tax Claim Bureau*, 449 A.2d

---

[5] "Our scope of review in tax sale cases is limited to determining whether a trial court abused its discretion, rendered a decision unsupported by the evidence, or erred as a matter of law." *Estate of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951, 954 n.4 (Pa. Cmwlth. 2014).

The trial court issued its opinion on February 24, 2015.

879, 881 (Pa. Cmwlth. 1982).  Section 602 of the Tax Sale Law provides, in pertinent part:

> (a) At least thirty (30) days prior to any scheduled sale the [B]ureau shall give notice thereof, not less than once **in two (2) newspapers of general circulation in the county**, if so many are published therein, **and once in the legal journal**, if any, designated by the court for the publication of legal notices.  Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.
>
> (b) Where the owner is unknown and has been unknown for a period of not less than five years, the name of the owner need not be included in such description.
>
> (c) The description may be given intelligible abbreviations.
>
> (d) Such published notice shall be addressed to the 'owners of properties described in this notice and to all persons having liens, judgments or municipal or other claims against such properties.'
>
> (e) In addition to such publications, similar notice of the sale shall also be given by the [B]ureau as follows:
>
>> (1) At least thirty (30) days before the date of the sale, by **United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner** as defined by [the Tax Sale Law].
>>
>> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the [B]ureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.

4

It shall be the duty of the [B]ureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale **shall be posted** at least ten (10) days prior to the sale.

72 P.S. § 5860.602 (emphasis added). "**Owner**" is defined in Section 102 of the Tax Sale Law as

> **the person in whose name the property is last registered**, if registered according to law, **or**, if not registered according to law, the **person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording <u>and</u> in all other cases means any person in open, peaceable and notorious possession** of the property, as apparent owner or owners thereof, **or the reputed owner or owners thereof**, in the neighborhood of such property[.]

72 P.S. § 5860.102 (emphasis added).

> The law 'is well settled in Pennsylvania that a valid tax sale requires strict compliance with all three of the notice provisions of Section 602' of the [Tax Sale Law] and that, if any of the notices are 'defective, the sale is void.' *In re Upset Price Tax Sale of September 25, 1989*, . . . 615 A.2d 870, 872 ([Pa. Cmwlth.] 1992). Strict compliance is necessary 'to guard against the deprivation of property without due process of law.' *In re Upset Price Tax Sale of September 10, 1990 (Sortino)*, . . . 606 A.2d 1255, 1258 ([Pa. Cmwlth.] 1992).
>
> Our Supreme Court has explained that a presumption of the regularity of an official act . . . 'exists until the contrary appears.' *Hughes v. Chaplin*, . . . 132 A.2d 200, 202 ([Pa.] 1957).

*In re: Upset Sale Tax Claim Bureau McKean Cnty.*, 965 A.2d 1244, 1246-47 (Pa. Cmwlth. 2009) (footnote omitted). "Where a property owner avers defective notice, the burden of proving strict compliance with the [Tax Sale Law's] notice provisions rests with the taxing authority. If any of the required notices is defective, the tax sale

5

is void and must be set aside."[6] *Estate of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951, 956 (Pa. Cmwlth. 2014) (citations omitted). Thus, in order for a tax sale to be valid, the registered owner or other person named in county records or in open possession or reputed owner must be notified by publication at least 30 days before the sale, by certified mail and by posting 10 days before the sale. *See Popple v. Luzerne Cnty. Tax Claim Bureau*, 960 A.2d 517 (Pa. Cmwlth. 2008); *In re Tax Sale of 28.8525 Acres in Middlecreek Twp. Tax Sale No. 12434*, 688 A.2d 1239 (Pa. Cmwlth. 1997).

At the hearing, Bureau Director Jennifer Wooster (Wooster) testified that the Bureau had no record of either Owner's death, nor did it locate in its research any deed or other record reflecting any transfer of the Property or interest therein to Dupas. R.R. at 6a-7a. She further stated that although the Owners' tax assessment card reflects a P.O. Box 123, Mahaffey, Pennsylvania address, the Owners' record address was 56 Woodcliff Avenue, Little Falls, New Jersey. *See* C.R. N.T. Ex. B; *see also* R.R. at 7a-8a. Regarding why in April 2013 the Bureau's notices were addressed to Dupas on the Owners' behalf, Wooster speculated: "There must have been some verification from either the [USPS] or some information that came to us through [a] tax claim." R.R. at 8a-9a. She acknowledged that her research failed to disclose any reason why Dupas would be a claimant or party in interest. *See* R.R. at 9a.

Dupas testified at the hearing that the Owners lived between Mahaffey, Pennsylvania and Little Falls, New Jersey, but mostly in Little Falls, which is where

---

[6] Based upon the evidence presented in this case and the Tax Sale Law's definition of "owner" cited above, Dupas may have lacked standing to challenge the tax sale. 72 P.S. § 5860.102. However, this Court has found non-owner standing where the challenging party had "substantial, direct and immediate interest" to challenge a tax sale. *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 309 (Pa. Cmwlth. 2013). Notwithstanding, since the Bureau did not raise this issue before the trial court, it has been waived. *First Horizon Home Loan Corp. v. Adams Cnty. Tax Claim Bureau*, 847 A.2d 774 (Pa. Cmwlth. 2004).

they died.  R.R. at 16a.  He explained that the Owners lived next door to him at 52 Woodcliff Avenue, Little Falls, New Jersey.  He assumed that the estate attorney alerted Clearfield County or the Bureau of the Owners' deaths.  Dupas explained that there was not a tax delinquency on the Property before 2012 because on a prior occasion when he received a Property tax sale notice, he collected money from his siblings and paid the taxes.  He admitted that he knew that the 2012 taxes had to be paid, but he "was waiting for the final notice."  R.R. at 17a-18a.  Dupas claimed that he "never got any of th[e] notices" the Bureau sent to him at 56 Woodcliff Avenue, Little Falls, New Jersey regarding the 2012 tax delinquency or sale.[7]  R.R. at 18a; *see also* R.R. at 18a-19a.  He could not identify who A.D. Keay is, but later surmised that it may have been the mail carrier.[8]  *See* R.R. at 20a.

Dupas disclosed that he did not know whether his mother died with or without a will, but recalled that his father died with a will under which he "believe[d the Property] went to all four siblings."  R.R. at 19a.  He acknowledged that since the Owners' Mahaffey, Pennsylvania address is on their tax assessment card, and the tax sale notices were sent to his attention at his 56 Woodcliff Avenue, Little Falls, New Jersey address, "they must have gotten my name.  I probably had -- because it's my address.  And I had gotten it after my brother had passed, I had gotten the notices."  R.R. at 21a-22a.

The Owners' nephew Daniel Dupas, who lives in Hastings, Pennsylvania, stated that he owns property near the Owners' Property and visits it

---

[7] Dupas declared that, to the best of his knowledge, none of his siblings received the subject tax sale notices.

[8] Dupas testified that he lives with Christina, Marcy and Aubrey, and has never appointed anyone to accept mail as his agent.  *See* R.R. at 20a-21a.  In Dupas' brief, he refers to the three individuals as having his same last name.  Dupas Br. at 4.

quite a bit. His testimony regarding whether posting was on the Property was as follows:

> Q . . . This is the posting of the [Property] that was supposedly posted on August 28[th]. Do you remember seeing this posting?
>
> A No.
>
> Q Had you been to the [P]roperty during this time?
>
> A Yes.
>
> Q What was the occasion that you were near the [P]roperty?
>
> A It was Labor Day weekend, and I was doing some work on my property and we were back and forth through the area, through the farm right there. The driveway comes right down through there.
>
> Q Okay. And you do not remember seeing this posting?
>
> A No.

R.R. at 24a-25a. However, Sara Sorbera (Sorbera) testified that she was engaged by Clearfield County to post the Property and did so on August 28, 2014, as reflected in her affidavit and photograph admitted into evidence without objection. *See* R.R. at 25a-27a, 28a; *see also* C.R. N.T. Ex. G.

"As the finder of fact, the trial court has exclusive authority to weigh the evidence, make credibility determinations and draw reasonable inferences from the evidence presented." *Barylak*, 74 A.3d at 417. The trial court in this case stated:

> This case presents a unique set of facts. Both owners under [the Tax Sale Law] were deceased at the time of the sale. No administration of this [P]roperty was done in Clearfield County and as a result, there is no subsequent record owner of the [P]roperty entitled to notice under [the Tax Sale Law]. It is as likely as not that [] Dupas is a beneficiary under his Father's Will or intestate heir entitled to claim a distributive share in the [P]roperty. However, there is no evidence of record in Clearfield County nor was any

8

testimony or evidence sufficiently established at [the] hearing to confirm that the [P]roperty has been administered and has cleared the claims of creditors. As such, there is no basis for this Court to conclude that [] Dupas is an 'owner' under [the Tax Sale Law] entitled to notice.

Tax collection cannot be frustrated by the failure of people to properly administer estates. This is why [the Tax Sale Law] permits sales to be confirmed if notice was provided to the last record owners, whether or not there is evidence that notice was received.

While the Bureau apparently had some reason to know that [] Dupas claimed an interest in the [P]roperty and had paid prior delinquent taxes, there is nothing of record in Clearfield County confirming that he is an owner. As such, the contention in the Petition '. . . (t)hat the current owners of the [P]roperty did not receive proper notice of the proposed sale' is accurate and unavailing. The Court also notes that the testimony of [] Dupas that he did not know any A.D. Keay was not considered by this Court to be credible.

Trial Ct. Op. at 6-7. Accordingly, the trial court concluded:

At the time of the tax sale, there was no new record owner of the [P]roperty. The Bureau acknowledges that it must use ordinary common sense business practices in ascertaining owners and proper addresses to which notices are required by [the Tax Sale Law] to be sent. *Kleinberger v[]. Tax Claim Bureau of Lehigh C[nty.]*, 438 A.2d 1045 (Pa.[]Cmwlth. 1982). However, the issue here is ownership, not location. There is no current owner of record because no deed, will or decree from the estate of Francis Dupas has ever been recorded in Clearfield County. While the Bureau must exhaust reasonable efforts to locate owners, it cannot find what doesn't exist, and where estates are not administered, there are numerous potential owners. Here, [Dupas] was sent notice at his residence and [the Tax Sale Law] provides that absence of proof that the notice was received does not defeat a sale.

Accordingly, the [Bureau] did give the required prior written notice and did exercise reasonable efforts under the circumstances of this case to determine the owners of the [P]roperty, their whereabouts and to provide notice.

9

[Dupas'] rights under the Tax Sale Law and of due process were not violated. The Court correctly dismissed the Petition[.]

Trial Ct. Op. at 7. We find no error in the trial court's conclusions. Based upon our review of the record evidence, the Bureau satisfied all three tax sale notice requirements.

With regard to the Bureau's mailed notice, it is undisputed that the Bureau records reflected that Dupas' parents were the Property's record owners, that the Bureau was unaware that the Owners were deceased, and that there was no public record that Dupas or anyone else had an interest in the Property.[9] Rather, at some point, perhaps when Dupas paid the Property's previously-delinquent taxes, the Bureau was notified that the Owners were to be reached in care of Dupas at his Little Falls, New Jersey address.

> **The [*Tax Sale Law*] *does not require the Bureau to notify anyone not of record with an interest in property subject to a tax sale*.** *Although the notice provisions of the* [*Tax Sale Law*] *must be strictly construed in order to guard against the deprivation of property without due process of law,* **the Bureau's duty to search for owners' correct names and addresses in a tax sale is limited to owners of record as defined by the [*Tax Sale Law*]**. The Bureau only has the burden of proving that it complied with all statutory notice provisions and applied common sense business practices in ascertaining proper addresses.

*Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 309 (Pa. Cmwlth. 2013) (citation omitted; bold emphasis added) (quoting *Farrow v. Tax Claim Bureau of*

---

[9] Notably, Dupas referred to himself as "an unrecorded property owner" in his brief. Dupas Br. at 8. Moreover, since Dupas could not state what information was given to the Bureau, when or by whom, there is no support in the record for Dupas' claim that since the Bureau knew to send Owner notices to his New Jersey residence rather than his parents' address, "[the Bureau] was clearly on notice that [Dupas] had an interest in the [P]roperty." Dupas Br. at 10; *see also* R.R. at 21a-22a. Finally, Dupas presented no evidence to establish any claim he may have had to the Property.

*Monroe Cnty.*, 704 A.2d 1137, 1142 (Pa. Cmwlth. 1997)). Moreover, citing Section 602(h) of the Tax Sale Law,[10] this Court has held that as long as the Bureau otherwise complied with the mailed notice requirements, a tax sale cannot be defeated by the fact that the owner did not actually receive the notice. *Steinbacher v. Northumberland Cnty. Tax Claim Bureau*, 996 A.2d 1095 (Pa. Cmwlth. 2010); *In re Upset Tax Sale Held 11/10/97*, 784 A.2d 834 (Pa. Cmwlth. 2001); *Kleinberger*.

Here, the March 7, 2013 pre-Notice of Return and Tax Claim sent to Owners in care of Dupas at Dupas' address was not returned as undelivered. *See* C.R. N.T. Ex. D; *see also* R.R. at 7a-8a. The May 9, 2014 Notice of Public Tax Sale was likewise sent to Owners in care of Dupas at Dupas' address by certified mail, restricted delivery, and was accepted by A.D. Keay on behalf of "F. Dupas" behalf. *See* C.R. N.T. Ex. F; *see also* R.R. at 11a. Dupas admits that the "Bureau sent out the notice in a timely fashion and to the proper address." Dupas Br. at 14. Thus, the Bureau complied with the 30-day certified mailing requirement in Section 602(e)(1) of the Tax Sale Law. The trial court did not find credible Dupas' claim that he did not know A.D. Keay. Although only required if a return receipt was not received, the Bureau, perhaps out of an abundance of caution, nevertheless also sent the August 20, 2014 10-Day Notice of Public Tax Sale by first class mail to Owners in care of Dupas at Dupas' address and it was not returned as undelivered. *See* C.R. N.T. Ex. H; *see also* R.R. at 12a-13a. Therefore, the Bureau also complied with Section 602(e)(2) of the Tax Sale Law. Because substantial evidence supports the trial court's conclusion that the Bureau properly mailed the tax sale notices, even if we were to accept as true

---

[10] Section 602(h) of the Tax Sale Law states in relevant part: "No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section." 72 P.S. § 5860.602(h).

11

Dupas' claim that he did not receive them, the subject tax sale cannot be defeated on that basis.[11] *Steinbacher*; *In re Upset Tax Sale Held 11/10/97*; *Kleinberger*.

Regarding the Bureau's published notice, Dupas did not dispute that the Bureau properly complied with the requirement that notice is published in at least two newspapers of general circulation on August 5, 2014 and one legal journal covering Clearfield County on August 8, 2014, which was at least thirty days before the tax sale, in accordance with Section 602(a) of the Tax Sale Law.

Relative to the Bureau's posted notice, "an affidavit of posting is competent evidence that the premises were properly posted. *See* 42 Pa.C.S. § 6104(a) [(relating to evidence of official government action)]." *Barylak*, 74 A.3d at 416. Here, Sorbera's affidavit, together with her testimony and a photograph of the posting constituted substantial evidence that the Property was properly posted. Daniel Dupas' failure to see the notice while traveling back and forth "through the area" the following weekend did not sufficiently rebut that Sorbera properly posted the Property on August 28, 2014, which was more than 10 days before the September 12, 2014 tax sale in compliance with Section 602(e)(3) of the Tax Sale Law. R.R. at 25a. Accordingly, the trial did not err by holding that notice of the Property's tax sale was given in accordance with the Tax Sale Law.

Dupas also argues that the trial court erred by holding that the Bureau exercised reasonable efforts to discover Dupas' whereabouts. We disagree. Section 607.1 of the Tax Sale Law provides:

> (a) **When any notification of a pending tax sale . . . is required to be mailed to any owner** . . . or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal

---

[11] Dupas' testimony that he was aware that the Property's 2012 taxes were owed, but that he was waiting for "**the final notice**" before paying them, makes questionable his claim that he did not receive **any** of the mailed notices. R.R. at 18a-19a (emphasis added).

signature of the addressee or **under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee** or is not returned or acknowledged at all, **then**, before the tax sale can be conducted or confirmed, **the [B]ureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.** The [B]ureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in [the Tax Sale Law].

(b) The notification efforts required by subsection (a) shall be in addition to any other notice requirements imposed by [the Tax Sale Law].

72 P.S. § 5860.607a (emphasis added).[12]

Notwithstanding Dupas' speculation that the Bureau was on notice of his interest, the record evidence and his admission on appeal support the trial court's conclusion that any interest he claims to have had in the Property was unrecorded and not subject to the Bureau's county (and, conceivably, state) record search. The only alternate information was that the Owners could be reached at Dupas' address. Despite Dupas' claim that he did not receive the tax sale notices, he does not dispute that the notices were timely sent to Dupas' long-time address. Even if we were to conclude that A.D. Keay's signature "rais[ed] a significant doubt as to [Dupas' or the Owners'] actual receipt of such notification," Dupas does not proffer and we cannot conceive of what other efforts the Bureau would have to undertake in order to

---

[12] Added by Section 30 of the Act of July 3, 1986, P.L. 351.

13

discover Dupas' whereabouts.  72 P.S. § 5860.607a(a).  Accordingly, the trial court did not err by holding that the Bureau exercised reasonable efforts to discover Dupas' whereabouts.

Based on the foregoing, we affirm the trial court's order.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Francis and Mary Dupas,    :
H, B and 48 acres surface, Bell    :
Township, Clearfield County,    :
Pennsylvania, known as    :
Map No. D12-000-00004, Control No.  :
10201255    :
    :  No. 56 C.D. 2015
Appeal of: Floyd Dupas    :

## O R D E R

AND NOW, this 7th day of October, 2015, the Clearfield County Common Pleas Court's December 17, 2014 order dismissing Floyd Dupas' Petition to Set Aside and/or Strike Tax Sale and confirming the tax sale to Heather Kunselman is affirmed.

_____
ANNE E. COVEY, Judge