## In re The UPSET SALE OF PROPERTIES AGAINST WHICH DELINQUENT 1997 TAXES WERE RETURNED TO THE TAX CLAIM UNIT, FISCAL OPERATIONS ON OR ABOUT THE LAST DAY OF 1998.

## Appeal of A & X Investment Company, Inc.

Commonwealth Court of Pennsylvania.

Argued April 4, 2001.
Decided May 17, 2001.

William P. Coffin, Easton, for appellant.

Ralph J. Bellafatto, Easton, for appellee.

Before FRIEDMAN, Judge, FLAHERTY, Senior Judge, and MIRARCHI, Senior Judge.

MIRARCHI, Senior Judge.

A & X Investment Company, Incorporated (A & X) appeals from an order of the Court of Common Pleas of Northampton County (trial court) which dismissed A & X's exceptions and confirmed the upset tax sale of its property by the Northampton County Tax Claim Bureau (Bureau). We affirm.

A & X owned a property located at 4654 Concord Circle, Bethlehem Township, Northampton County (subject property). On August 3, 1999, a notice of tax sale was sent to A & X. The notice stated that the tax sale of the subject property would be held at 2:00 p.m., September 13, 1999. The notice further advised that "You may be able to remove this property from sale by paying the specific tax that has put this property in jeopardy by coming forward and making payment only with *CASH, CERTIFIED CHECK OR MONEY OR-*

*DER* before the actual sale." Reproduced Record (R.R.), p. 29a (emphasis in original). The notice advised A & X to "make checks payable and mail to" the Bureau. *Id.* The upset sale price was listed as $6161.93. On September 13, 1999, the subject property was sold to Anthony Malinowski for $12,380.97. On October 12, 1999, A & X filed objections and exceptions to the tax sale and a non-jury trial was held on March 21, 2000.

At the trial, A & X presented the testimony of Ajameo Kalonji, Karen Green and Lisa Minatee. Kalonji, the owner of A & X, testified that he gave cash to Green, one of his employees, to purchase postal money orders for the amount of the unpaid tax and instructed her to send the money orders to the Bureau by United States Postal Service Priority Mail. Green testified that, on September 7, 1999, she went to the post office in Valsburg, New Jersey and purchased money orders. She then placed the money orders in an envelope, affixed stamps to the envelope and gave the envelope to the postal clerk. Copies of the money orders dated September 7, 1999 and a copy of the Priority Mail envelope, postmarked September 7, 1999, were entered into evidence.

Minatee testified that she attempted to pay the back taxes on September 13, 1999. She testified that she had a certified check in the amount of $5176.93 and $1000 in cash. She arrived at the Bureau at 2:05 p.m. and waited in line. When a clerk was available, Minatee attempted to tender payment, but the clerk first checked the computer to determine the proper amount. The clerk then made a phone call and told Minatee that the property had been sold. Minatee testified that the clerk made that call at approximately 2:15 p.m. Minatee testified that she arrived at County Council Chambers, the location where the tax sale was held, between 2:30 and 2:35 p.m.

The Bureau presented the testimony of James Fowler, Anthony Malinowski and the deposition testimony of Ruth Tiburzi. Tiburzi, Tax Claim Supervisor, testified that she conducted an upset tax sale on September 13, 1999 and the subject property was sold at that sale. Tiburzi estimated that the property was probably sold between 2:30 and 2:45 p.m. Tiburzi testified that when a clerk at the Bureau called her to tell her that Minatee was in the Bureau's office to pay the taxes, the subject property had already been sold to Malinowski. Tiburzi testified that, had she been advised by her office that Minatee was tendering payment of the taxes prior to the sale of the subject property, Tiburzi would have taken the property off the list and it would not have been sold. Tiburzi testified that she saw Minatee enter County Council Chambers after the subject property had been sold. Tiburzi testified that Minatee approached the table where Tiburzi was sitting and inquired about the status of her property. Minatee was informed that the property had already been sold.

Tiburzi further testified that when mail is received at the Bureau, it is opened by one of the supervisors and then distributed to a clerk for processing. Tiburzi testified that on September 29, 1999, the Bureau received a Priority Mail envelope from A & X containing money orders totaling $6178. The money orders were sent back to A & X with a notation that they were not received until September 29, 1999. Tiburzi testified that Malinowski, the successful bidder, did not provide any certification that he did not owe any municipal taxes, county taxes or utility bills within Northampton County. Tiburzi testified that the Bureau does not require such certifications from successful bidders at tax sales.

Fowler, the supervisor of the mail room, testified as to the procedures that were in place for mail room operations in September 1999. Fowler testified that mail is picked up every morning from the post office and is brought to the Northampton County Government Center. It is then sorted and delivered to the offices in the Government Center.[1] Mail is usually distributed between 10:30 and 11:30 a.m. Fowler testified that the mail is distributed the same day that it is picked up at the post office. According to Fowler, the only reason mail is held in the mail room is if there is a question as to which office the mail is to be directed. However, Fowler testified that the address on A & X's Priority Mail envelope was sufficient for the mail room to deliver it without delay to the Bureau. Fowler also testified that there were no special procedures for handling Priority Mail.

Malinowski testified that he had a small delinquency at the time he purchased the subject property. Malinowski testified that as soon as he learned of the delinquency, he paid it. Malinowski testified that he had previously purchased properties at tax sales and had never been asked to provide a certification.

■ On June 14, 2000, the trial court issued an opinion and order denying and dismissing A & X's exceptions to the tax sale. The trial court rejected A & X's argument that the mail box rule should apply. The trial court stated that "[w]ere

that the case, all tax sales would have to be held in abeyance until it could be assured that no mail is outstanding." Trial Court Opinion, p. 4. The trial court concluded that the risk of "mail miscarriage" is on the taxpayer who could have chosen a method by which he would have been notified of its timely receipt. Next, the trial court found that Minatee's offer of payment was not timely. Finally, the trial court found that Section 619.1 of the Real Estate Tax Sale Law (Tax Sale Law),[2] requiring a successful bidder to provide a certification, provides a method for a municipality to have a sale set aside. It does not, however, provide a remedy for the previous owner to have the sale set aside. A & X now appeals to this Court.[3]

On appeal, A & X argues that the trial court erred (1) in not applying the mailbox rule, (2) in finding that the payment tendered by Minatee to the Bureau should not be accepted as payment of taxes owed, and (3) in finding that 72 P.S. § 5860.619(a) did not prevent Malinowski from purchasing the subject property.

■ We first address A & X's arguments concerning the mailbox rule. A & X relies on *Meierdierck v. Miller*, 394 Pa. 484, 147 A.2d 406 (1959), for the proposition that where the use of the mail as a means of acceptance is implied or authorized from the surrounding circumstances, the acceptance is complete by posting the letter in normal mail channels without more.[4] A & X argues that the notice of

1. Fowler testified that the Bureau is located in the Northampton County Government Center.

2. Act of July 7, 1947, P.L. 1368 *as amended*, 72 P.S. § 5860.619a. Section 619.1 was added by Section 3 of the Act of December 21, 1998, P.L. 1008.

3. Our scope of review in tax sale cases is limited to determining whether the trial court

abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law. *Plank v. Monroe County Tax Claim Bureau*, 735 A.2d 178 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 560 Pa. 753, 747 A.2d 373 (1999).

4. *Meierdierck* goes on to state that "[t]here is no requirement of receipt unless expressly provided for." *Id.* at 487–88, 147 A.2d at 408. In the case before us, the notice of tax

tax sale dated August 3, 1999 impliedly authorized the use of the mail by stating "Make checks payable and mail to: County of Northampton, Tax Claim Bureau, Northampton County Government Center, 669 Washington Street, Easton, Pennsylvania 18042–7482." R.R., p 29a. A & X argues that because money orders for the amount of the delinquent taxes were placed into the United States Postal Service mail on September 7, 1999, the taxes owed by A & X should be deemed to be paid as of that date.

Malinowski argues that the mailbox rule has been rejected by this Court in *In re Upset Sale Tax Claim Bureau of Wayne County Held September 12, 1994*, 672 A.2d 846 (Pa.Cmwlth.1996). In that case, a property was scheduled to be sold at a tax sale on September 12, 1994. On September 9, 1994, the property owner purchased a money order for the amount of the delinquency and mailed the money order to the tax claim bureau by certified mail, return receipt requested. The property was sold as scheduled on September 12, 1994. On September 15, 1994, the tax claim bureau received the payment. On appeal, this Court held that the tax sale of the property was valid. The Court noted that the property owner was aware that the payment had to be received by the tax claim bureau prior to the tax sale but that the payment was received three days after the sale.

A & X attempts to distinguish *Wayne County* on the basis that, in that case, the property owner was told that the tax claim bureau had to receive the payment before the scheduled tax sale in order for the tax claim bureau to stop the sale of the property. A & X argues that in the case before us, no actual date was stated when the check had to be received by the Bureau. We disagree. The notice of tax sale provided that payment must be received

specifically provided that the tax sale was scheduled to be held at 2:00 p.m., September 13, 1999. The notice further provided that the property owner may be able to remove the property from the sale by paying the delinquent tax *"before the actual sale."* R.R., p 29a, emphasis added. Reading these two provisions together, the notice is sufficient to advise the property owner that the delinquent taxes must be paid before 2:00 p.m., September 13, 1999.

■ A & X also argues that the depositing of a properly addressed letter in the post office raises a presumption that it reaches its destination in the due course of mail and that this presumption is not negated solely by testimony that the notice was not received. The Bureau here does not deny receipt of A & X's Priority Mail letter; rather, the Bureau asserts that the letter was not received until September 29, 1999. The trial court heard the testimony of Fowler concerning the mailroom procedures and the testimony of Tiburzi regarding the receipt of the Priority Mail letter. The trial court implicitly credited this testimony. It is well-settled that this Court is bound by the credibility determinations of the trial court. *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514 (Pa.Cmwlth.1998).

The trial court noted that the delinquent taxpayer has a duty of protecting his title against tax defaults, *Hess v. Westerwick*, 366 Pa. 90, 76 A.2d 745 (1950), and concluded that the risk of mail miscarriage should be assumed by the delinquent taxpayer, *see generally, Teslovich v. Johnson*, 37 Pa.Cmwlth. 449, 391 A.2d 11 (1978), *aff'd*, 486 Pa. 622, 406 A.2d 1374 (1979) (where notice of tax sale complies with the requirements of the Tax Sale Law, risk of mail miscarriage is assumed by delinquent

before the actual sale.

taxpayer).[5] The trial court stated that "[t]he sale of this property could have easily been avoided had [A & X] opted to send the payment in such a way that it would have been notified of its timely receipt." Trial Court Opinion, p. 5. The trial court's analysis of this issue does not reflect an abuse of its discretion or an error of law.

■ A & X next argues that the trial court erred in not declaring the tax sale of the subject property null and void due to the failure of the Bureau to immediately accept the tender of payment from Lisa Minatee and stop the tax sale before the subject property was sold. A & X relies on the testimony of Ruth Tiburzi, Tax Claim Supervisor, that Minatee attempted to tender payment to the clerk in the Bureau office sometime between 2:00 p.m. and 2:15 p.m. and her testimony that the subject property would have been sold approximately between 2:30 p.m. and 2:45 p.m. Based on this testimony, A & X argues that the clerk should have immediately contacted the auctioneer so that the sale could have been stopped.

The trial court found that Minatee knew that the taxes had to be paid by September 13, 1999 at 2:00 p.m., that Minatee arrived at the Bureau that day at about 2:05 p.m.; and that she was helped by a Bureau employee at 2:15 p.m. The trial court further found that the Bureau employee made a call and then reported that the property had been sold. The trial court noted that there was some discrepancy in the various testimony as to the actual timing of events, but stated that there was no dispute as to the basic facts: Minatee arrived after the sale began and attempted to make payment but the payment was refused when it was learned that the subject property had already been sold. The trial court's finding, that Minatee's offer of payment was not timely, is supported by substantial evidence.

■ A & X next argues that the trial erred in not declaring the tax sale of the subject property null and void because of Malinowski's failure to comply with Section 619.1 of the Tax Sale Law, which provides in pertinent part:

> (a) Within twenty (20) days following any sale under this act, a successful bidder shall be required to provide certification to the bureau that the person is not delinquent in paying real estate taxes to any of the taxing districts where the property is located and that the person has no municipal utility bills that are more than one year outstanding.

> (b) As used in this section, the following terms shall have the following meanings:

> "Certification," shall mean proof via receipts of paid real estate taxes and municipal utility bills within the jurisdiction or a notarized affidavit by the bidder evidencing payment of such real estate taxes and municipal utility bills.

Under Section 619.1, it is a mandatory requirement that the successful bidder provide the certification within the twenty-day period. *In re Rowan*, 763 A.2d 958 (Pa.Cmwlth.2000). It is undisputed that Malinowski did not provide the certification required by Section 619.1. It is also undisputed that as of September 13, 1999, Malinowski did owe property taxes on another property located in Northampton County but that the taxes were paid in October, 1999.

---

5. A & X attempts to distinguish *Teslovich* on the basis that it had the right, under the mailbox rule, to mail the payment to the Bureau. We find A & X's effort to distinguish *Teslovich* unavailing.

As noted by the Court in *Rowan*, Section 619.1 does not specify the consequence for failing to provide the certification. Because the Legislature failed to provide for the consequence of failure to comply with Section 619.1, we are reluctant to create one. *See Department of Public Welfare v. Portnoy*, 129 Pa.Cmwlth. 469, 566 A.2d 336 (1989), *aff'd*, 531 Pa. 320, 612 A.2d 1349 (1992). This is in keeping with the well-settled principle that tax statutes must be strictly construed against the government and any reasonable doubts as to its application to a particular case must be resolved in favor of the taxpayer. 1 Pa.C.S. § 1928(b)(3).

The failure of Malinowski to provide the certification required by Section 619.1 does not affect the validity of the sale of the subject property to him. Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 17th day of May, 2001 the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby affirmed.