**COMMONWEALTH of Pennsylvania**

v.

**Rose SPROCK, a/k/a Rosalie Sprock, Appellant.**

**Commonwealth of Pennsylvania,**

v.

**Carl Sprock, a/k/a Carl A. Sprock, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 1999.

Decided April 11, 2002.

William R. Carroll, Somerset, for appellant.

C. Gregory Frantz, Somerset, for appellee.

Before DOYLE, Senior Judge [1]
COLINS, President Judge, and
McCLOSKEY, Senior Judge.

OPINION BY Senior Judge DOYLE.

Rose and Carl Sprock appeal from the convictions and sentences imposed on them by the Court of Common Pleas of Somerset County for summary violations of the Borough of Central City's Safe Property Maintenance Ordinance, Ordinance 347. We reverse the trial court's orders and vacate the Sprocks' sentences.

The Sprocks acquired ownership of Lot No. 1 of Block 47 on Sunshine Avenue in Central City by deed dated September 26, 1979, as recorded in Somerset County Deed Book, Volume 845, page 407. The Sprocks failed to pay the real estate taxes on the property for the years 1981 through 1987. As a result of that failure, the Somerset County Tax Claim Bureau (Bureau) offered the property for sale at a tax sale on September 14, 1987, at the upset price

of $9,942.70. However, no bids were received that met or exceeded the upset price and the property was not sold. The Bureau took no further action with regard to the property and simply allowed it to remain in its inventory of unsold property, and the Sprocks continued to be listed as the owners of record.

Approximately ten years later, in June 1997, the Borough adopted Ordinance 347 to govern the maintenance of private property within the Borough. The Borough issued citations against the Sprocks on October 21, 1997, pursuant to Section 6 of Ordinance 347, alleging that they had failed to maintain the property. Section 6 of the ordinance states, in relevant part as follows:

> No owner of any building or structure shall fail to take steps and perform such maintenance thereto, as may be required from time to time, to ensure the property is safe, sound, sanitary and secure and does not present a health and/or safety hazard to surrounding properties and to the general populace.

Central City, Pa. Ordinance 347, sec. 6(1) (June 24, 1997). The ordinance defines an owner as

> any person or persons, jointly or severally, firm, corporation or other entity which, either by conveyance or inheritance or otherwise, is vested with the title to a lot and/or improvement thereto or who retains the exclusive control of such a lot and/or improvements thereto in his capacity as a legal representative, such as an administrator, trustee, executor, etc.

*Id.* sec. 4.

A district justice found the Sprocks guilty of violating the ordinance. They appealed their convictions to the Court of Common Pleas where a hearing was held

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

on June 24, 1998.[2] At the hearing, the parties stipulated to the facts just recited as well as to the fact that the condition of the property established that there was a violation of the ordinance.[3]

Common Pleas determined that the Sprocks were the owners of the property for purposes of the ordinance and were thus guilty of the violations because they were listed as the owners of record.

As already stated, the Sprocks do not contest the fact that the violations existed at the property or that no irregularities occurred in the tax sale proceedings. The single question presented for our review is whether the Sprocks, for purposes of Ordinance 347, were the owners of the property after the property had been offered at a tax sale by the Bureau, and there were no bidders prior to the issuance of citations pursuant to the Ordinance.

The Sprocks assert that they were not the owners of the property when the citations were issued because the Bureau took title to the property when it offered it to the public at the upset tax sale. The Commonwealth maintains that the Sprocks are responsible under the ordinance because they were the owners of record at the time that the citations were issued.

We begin our analysis with an examination of the Real Estate Tax Sale Law (Law).[5] When the owner of a property fails to pay real estate taxes on that property, the amount of those taxes becomes a first lien against the property and is filed with the tax claim bureau of the county in which the property is located. Sections 301, 302 and 315 of the Law, 72 P.S. §§ 5860.301, 5860.302 and 5860.315. If the lien is not satisfied, the tax claim bureau will, after notice and opportunity to cure, offer the property for sale at an upset tax sale. Section 601 of the Law, 72 P.S. § 5860.601. A property owner may satisfy the lien(s) against his property by paying the amount of the lien(s) to the tax claim bureau prior to an upset sale or he may bid on the property at the upset sale. Section 501 of the Law, 72 P.S. § 5860.501. After the upset sale, the owner of the property is prohibited from redeeming it. Section 607(g) of the Law, 72 P.S. § 5860.607(g). If no bids are received that equal or exceed the upset price, the Bureau is required, within the following twelve months, to petition the court for permission to conduct a judicial sale. Section 616 of the Law, 72 P.S. § 5860.616.[6] If insufficient bids are received at a judi-

---

2. The Sprocks were charged individually; the trial court consolidated the cases.

3. The following exchange took place between the Borough Solicitor, Mr. Frantz, and the Sprocks' attorney, Mr. Carroll:
   MR. FRANTZ [Borough Solicitor]: I think we stipulated that there is a violation—
   MR. CARROLL [the Sprocks' attorney]: Oh, yes. I'm sorry.
   We would also stipulate that on the date in question, October 21, 1997, it would be very reasonable for any observer to conclude that there is a violation of the ordinance in that the condition of the property does show that maintenance has not been performed and the property is not in a safe, sound and sanitary condition. We stipulate to that.
   We do not stipulate that the Sprocks are responsible for that.

. . . .
   MR. CARROLL: The Sprocks are not challenging that the property violates the ordinance. They challenge that they are the ones responsible for it.
   (Notes of Testimony, N.T., Hearing of June 24, 1998, at 6–7).

5. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

6. Section 616 of the Law provides as follows:
   If within the period of ten (10) months after the date of the scheduled upset sale, the bureau has not filed a petition for a judicial sale under section 610 or the property has not been sold at private sale, the bureau shall, within the next immediately following two (2) months, file a petition for judicial sale of the property in the manner set forth in section 610.

cial sale, the Bureau must continue to hold the property in its repository of unsold property and may advertise it periodically and accept an offer of any price for the property. Sections 626 and 627 of the Law, 72 P.S. §§ 5860.626 and 5860.627. The owner of a property may not, however, repurchase his property at either a judicial sale, a private sale, or from the Bureau's repository of unsold property. Section 618 of the Law, 72 P.S. § 5860.618.[7] When a tax claim bureau sells a property at an upset sale or from its inventory and delivers a deed to the new owner, that "deed shall be in the name of the bureau as *trustee* grantor." Sections 608 and 615 of the Law, 72 P.S. §§ 5860.608 and 5860.615 (emphasis added).

■ No greater control can be exercised over a piece of real property than the act of disposing of it and such control cannot be exercised unless the person or entity that exercises such control has the statutory authority to do so. A tax claim bureau is empowered to dispose of a tax delinquent property the moment it concludes an upset sale; it may either convey title to the successful bidder at the upset sale if the price is met, or it may, alternatively, convey title at a later judicial sale or, failing that, it may, with the written consent of the taxing district involved, "accept an offer of any price ... without court approval and published notice of sale." Section 627(a) of the Law, 72 P.S. § 5860.627(a). To exercise such control, however, the tax claim bureau must have the statutory authority to convey good title to the property in some manner.

■ Sections 608 and 615 of the Law instruct that the deed to a tax delinquent property sold at an upset sale shall be conveyed by the bureau as **trustee**, which is a person or entity holding legal title to property for the benefit of another. Thus, it is clear that a tax claim bureau must become trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee, at that time, which is the most appropriate time for that to happen because the owner's right of redemption at that time is extinguished.[8] We so hold.[9]

---

72 P.S. § 5860.616.

7. Section 618 of the Law provides, in part, as follows:

> (a) The owner shall have no right to purchase his own property at a judicial sale, a private sale or from the bureau's repository for unsold property under the provisions of this act.

72 P.S. § 5860.618(a).

8. An owner who is the successful bidder for his own property at an upset sale is not redeeming his property. He is, instead, outbidding all other interested parties and there is no guarantee that the price he eventually pays will not be far in excess of what it would have cost to redeem the property before the sale. He cannot, of course, bid less than the upset price.

9. We note that upon enactment of the Law, it was required that "property already in the hands of the taxing authorities prior to [the Law's] effective date, ... should be turned over to the Tax Claim Bureau...." *Bernitsky v. County of Schuylkill*, 381 Pa. 128, 131, 112 A.2d 120, 122 (1955). And, upon such an event, "[a]ll rights and title vested in the Bureau, as trustee." *Id.* This transfer to the tax claim bureau "occurs by operation of law." *Petition of County Commissioners of Fayette County*, 386 Pa. 382, 385, 126 A.2d 737, 739 (1956). Similarly, at an upset sale, where there are no bids of the upset sale price, all rights in the property, *i.e.*, legal title, are transferred from the owners of the property to the tax claim bureau, as trustee, by operation of law. Addressing this principle in *Bernitsky*, Justice Allen M. Stearne stated: "The Legislature changed the provisions of redemption provided in the Act of 1941, ... [by the 1947 Real Estate Tax Sale Law], by stating that title to all properties acquired by the taxing authority as a result of delinquent real estate tax sales shall be delivered to the Tax

We now apply our holding to the case at hand. The trial court concluded that the Sprocks were the owners of the property because it was transferred to them by deed and they remained the owners of record. The trial court concluded further that "the Tax Claim Bureau does not hold the property as an administrator, trustee or executor." (Trial Court Opinion at 3). We respectfully disagree. At the time that the citations in this matter were issued, the Sprocks may have been the owners of record but the subject property had been previously offered at an upset tax sale and title to the property had, therefore, passed to the Bureau, as trustee. Ordinance 347 defines an "owner" of property as "any person or persons . . . or other entity which, either by conveyance or inheritance or *otherwise*, is vested with the title to a lot and/or improvement thereto or who retains the exclusive control of such a lot and/or improvements thereto in his capacity as a legal representative, such as an administrator, *trustee*, executor, etc." Central City, Pa. Ordinance 347, sec. 4 (emphasis added). The drafters of the Ordinance wisely require us to look beyond the mere fact of record title to see if there is, in addition, some person or entity who exercises "control" of a property in some capacity. In this case that entity is the Bureau. According to the definition of "owner" in Ordinance 347, the Tax Claim Bureau of Somerset County was the owner of the property as trustee at the time the citations were issued.

Accordingly, we determine that the trial court committed an error of law when it determined that the Sprocks were the owners of the property for purposes of Ordinance 347 at the time that the citations were issued, and we reverse the orders of the Court of Common Pleas of Somerset County and set aside the Sprocks' convictions for summary violations of Ordinance 347.

## ORDER

**NOW,** *April 11, 2002,* the orders of the Somerset County Court of Common Pleas in the above-captioned matters are hereby reversed, and the convictions of Rose Sprock, a/k/a Rosalie Sprock, and Carl Sprock, a/k/a Carl A. Sprock, for summary violations of the Borough of Central City's Ordinance No. 347 are set aside.

Bureau as trustee[,]" *Bernitsky* at 132, 112 A.2d at 123; and, quoting Justice Jones from Tremont Tp. School Dist., 366 Pa. 404, 409, 77 A.2d 403, 405 (1951), articulated the operative principle that: "Indeed it might well be considered to have occurred automatically because of the law's positive direction." *Bernitsky* at 133, 112 A.2d at 123.