IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: 2018 Upset Tax Sale | : | |
| | : | |
| Lorraine S. Everett | : | |
| | : | |
| v. | : | No. 1171 C.D. 2019 |
| | : | SUBMITTED: May 12, 2020 |
| Monroe County Tax Claim Bureau, | : | |
| David Keller and Paul W. Jenkins | : | |
| | : | |
| Appeal of: David Keller | : | |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                                     FILED:  June 9, 2020

David Keller (Keller) appeals from the July 8, 2019 order of the Court of Common Pleas of Monroe County (trial court) that granted exceptions filed by Lorraine S. Everett (Everett) to the sale of her property at an upset tax sale. Keller argues that the trial court erred in setting aside his purchase of Everett's property based on his status as a delinquent taxpayer. After review, we affirm.

## I.  Procedural and Factual Background

The Real Estate Tax Sale Law (RETSL)[1] provides a mechanism for the collection of taxes assessed against real property and for the sale of real property in the event of a real estate tax delinquency. Section 601 of RETSL authorizes an upset tax sale of real property by the county tax claim bureau following such a

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101 – 5860.803.

delinquency.[2]  If no bids are received for the real property at the upset tax sale, the real property may be exposed for judicial tax sale, as provided in Section 610 of RETSL.[3]  Should the real property remain unsold following the judicial tax sale, it shall be placed in a repository for unsold property, after which the county tax claim bureau may sell the real property without further court approval.[4]

Keller is the undisputed record owner of five real properties (Keller Properties) located in Monroe County (County).  Notes of Testimony (N.T.), 4/29/19, Ex. P-1.  The Keller Properties are currently held by the Monroe County Tax Claim Bureau (MCTCB) in its repository for unsold property, having been previously subjected to upset and judicial tax sales.[5]  N.T., 4/29/19, at 20.

Everett is the record owner of two real properties located in the County (Everett Properties).[6]  Keller purchased the Everett Properties at an upset tax sale held on September 12, 2018.  N.T., 4/29/19, Ex. Nos. R-1, R-3.  Thereafter, Keller filed two affidavits in conformance with Section 619.1(a) of RETSL, which provides that the successful bidder in an upset tax sale shall certify that he is not delinquent in paying real estate taxes to any of the taxing districts where the purchased property

[2] 72 P.S. § 5860.601.

[3] 72 P.S. § 5860.610.

[4] Sections 625-630 of RETSL were added by the Act of July 3, 1986, P.L. 351, 72 P.S. §§ 5860.625 - 5860.630.

[5] The record does not reflect when the Keller Properties were exposed for upset or judicial tax sale, only that Keller "walked [away] from a few properties . . . in [the] County from . . . 2008 until 2012." N.T., 4/29/19, at 69.

[6] The Everett Properties are located at 1245 Route 209, Chestnuthill Township, and 109 Scenic Drive, Polk Township.  Original Record, Item No. 6 at 4.

is located.[7] *Id.* Everett filed timely exceptions to the upset tax sale and a hearing on the matter was held by the trial court on April 29, 2019.

Melinda Knitter, an accountant with the MCTCB, testified that the MCTCB requires the successful bidder at a tax sale to file a certification pursuant to Section 619.1(a) of RETSL.[8] N.T., 4/29/19, at 15. The MCTCB introduced Keller's affidavits, submitted to the MCTCB on September 12, 2018, in which Keller certified that he was not delinquent in paying real estate taxes in any taxing district in which the Everett Properties were located. N.T., 4/29/19, Ex. Nos. R-1, R-3. A report generated by the MCTCB on November 27, 2018 (MCTCB Report), listed all Keller's real properties located in the County, including the Keller Properties, and the delinquent taxes, if any, associated with those properties. N.T., 4/29/19, at 16, 18, 20, Ex. P-1. The MCTCB Report reflected that the taxes assessed on the Keller Properties for the tax years 2007 through 2017 were delinquent. N.T., 4/29/19, Ex. P-1. The total amount of the tax delinquency was $51,787.52, as of November 27, 2018.[9] *Id.*

Keller testified he was aware delinquent taxes were owed for the Keller Properties, which he purchased in 2006. N.T., 4/29/19, at 68-69. Keller was under the impression, however, that he was no longer responsible for those taxes after the Keller Properties were placed in repository with the MCTCB, an act Keller

---

[7] Added by the Act of December 21, 1998, P.L. 1008, 72 P.S. § 5860.619a(a).

[8] The testimony presented by the MCTCB primarily focused on the notice provided to Everett as required under RETSL. As Everett has not challenged the sufficiency of the MCTCB's notice to this Court, we need not summarize the evidence presented on that issue.

[9] The MCTCB Report indicates delinquent taxes existed for another property owned by Keller; however, these taxes were satisfied by Keller prior to the date of the hearing before the trial court. N.T., 4/29/19, at 22.

3

considered a transfer of ownership. *Id.* Consequently, at the time Keller filed the affidavits under Section 619.1(a), Keller did not believe he was delinquent in paying any real estate taxes. *Id.* at 69.

By order dated July 8, 2019, the trial court granted Everett's exceptions and set aside the upset sale of the Everett Properties.[10] Trial Ct. Op. at 13. The trial court noted that Everett received notice of the September 12, 2018 upset sale as required by RETSL. *Id.* at 6. However, the affidavits filed by Keller under Section 619.1(a) were in error, as he owed delinquent real estate taxes on the Keller Properties. *Id.* The trial court found that Keller qualified as a delinquent property owner under Section 102 of RETSL,[11] which relevantly defines that term as the person whose name appears as an owner of record and whose taxes on the subject property are delinquent. *Id.* at 7-8. The trial court interpreted Section 619.1(a) of RETSL as prohibiting a party who owes delinquent taxes from purchasing a property being sold for delinquent taxes. *Id.* at 12. Because Keller had not satisfied the delinquent taxes owed on the Keller Properties, the trial court concluded he was ineligible to purchase the Everett Properties. *Id.* Accordingly, the trial court set aside the sale of the Everett Properties to Keller. *Id.* This appeal followed.

## II. Issues

On appeal,[12] Keller argues that the definition of delinquent property owner in RETSL was added after the Keller Properties were placed in repository with the

---

[10] The sale of a third property to Paul W. Jenkins is not part of the current appeal.

[11] The definition of "delinquent property owner" was added to Section 102 of RETSL by the Act of June 19, 2018, P.L. 239, 72 P.S. § 5860.102.

[12] This Court's review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law. *Montgomery County Tax Claim Bureau v. Mermelstein Family Trust*, 836 A.2d

4

MCTCB. Consequently, the trial court erred in concluding Keller was a delinquent property owner and delinquent in paying real estate taxes at the time he filed the affidavits pursuant to Section 619.1(a) of RETSL. Keller further argues that Section 619.1(a) of RETSL provides no remedy should a successful bidder fail to certify, or file an erroneous certification, that he is not delinquent in paying real estate taxes. Therefore, the trial court erred in creating a remedy by setting aside the sale of the Everett Properties.

## III.    Discussion

## A. Delinquent Property Owner

First, we address whether the trial court erred in concluding Keller was a delinquent property owner, as defined in Section 102 of RETSL, and delinquent in paying real estate taxes on the Keller Properties. Keller contends that, pursuant to this Court's decision in *Commonwealth v. Sprock*, 795 A.2d 1100 (Pa. Cmwlth. 2002), placement of the Keller Properties in the MCTCB's repository of unsold property acted to transfer ownership and legal title from Keller to the MCTCB. As Keller was no longer owner of the Keller Properties, the trial court erred in concluding he was delinquent in paying any real estate taxes owed. Keller further argues that placement of the Keller Properties in the MCTCB's unsold property repository predates the definition of delinquent property owner in RETSL, which became effective on August 18, 2018.[13] Accordingly, Keller cannot be considered a delinquent property owner.

---

1010, 1012 n.4 (Pa. Cmwlth. 2003).

[13] Keller cites August 20, 2018, as the effective date for the addition of "delinquent property owner" to Section 102 of RETSL. The definition of "delinquent property owner," however, was added to RETSL by the Act of June 19, 2018, effective in 60 days, which date would be August 18, 2018.

The relevant facts of *Sprock* are as follows. The Sprocks were record owners of real property held in the Somerset County tax claim bureau's repository of unsold property. *Sprock*, 795 A.2d at 1101. In 1997, approximately 10 years after the Sprocks' property was placed in the county's repository, the Sprocks were charged and convicted of a summary offense for failing to maintain the real property as required by the borough ordinance. *Id.* The court of common pleas upheld the Sprocks' summary conviction on the basis they were the owners of record for the property. *Id.* at 1102. The Sprocks appealed the conviction to this Court, which reversed.

The sole issue before this Court was whether, for purposes of criminal prosecution for failing to maintain the real property, the Sprocks met the definition of owner as set forth in the borough ordinance. Per the ordinance, a property owner was defined, in pertinent part, as any entity retaining control over the property in the capacity of a trustee. *Id.* at 1104. This Court then looked to the relevant provisions of RETSL governing the tax claim bureau's right to convey title to real property following a tax sale. *Id.* at 1103. Pursuant to Sections 608 and 615 of RETSL, once the tax claim bureau receives payment for real property sold at tax sale, the tax claim bureau shall deliver to the purchaser a deed "in the name of the [tax claim] bureau," *as trustee grantor*.[14] *Id.* This Court recognized that the Sprocks were still the record owners for the subject property. *Id.* at 1104. However, title to the property passed to the tax claim bureau "as trustee" once the property was offered at an upset tax sale. *Id.* In its capacity as trustee of the Sprocks' property, the tax claim bureau was owner of the Sprocks' property, *as defined by the borough ordinance*. Accordingly,

---

[14] 72 P.S. §§ 5860.608, 5860.615.

we reversed the court of common pleas and set aside the Sprocks' summary conviction. *Id.*

We cannot agree with Keller that our decision in *Sprock* is dispositive, as *Sprock* considered whether the Sprocks were owners of the subject property based on the definition set forth in a local ordinance. Keller's status as owner of the Keller Properties is governed by the relevant definition set forth in RETSL.

It bears noting that Keller has not disputed that he is the record owner of the Keller Properties, nor has he denied the continued delinquency of real estate taxes assessed thereon. Moreover, Keller failed to present any evidence demonstrating a different record owner of the Keller Properties existed at the time he filed his Section 619.1(a) certification. Rather, Keller has disclaimed any responsibility for the delinquency on the basis of *Sprock* and a belief that he is not a delinquent property owner under RETSL because the term did not exist at the time the MCTCB placed the Keller Properties in its repository of unsold property.

The date upon which the Keller Properties were exposed for tax sale is unknown; however, the record reflects that real estate taxes for the Keller Properties were delinquent for tax years 2007 through 2017. N.T., 4/29/19, Ex. No. P-1. Keller is correct that the definition of delinquent property owner did not exist during those tax years. It was in effect, however, on September 12, 2018, the date Keller certified he was not delinquent in paying real estate taxes. Even if this Court accepted Keller's argument that he is not a delinquent property owner under RETSL because his real estate tax delinquencies accrued prior to the definition's August 18, 2018 effective date, the terms "owner," "taxes," and "delinquent," as defined in Section 102 of RETSL, preexist Keller's failure to pay real estate taxes, commencing with the 2007 tax year.

7

Section 102 of RETSL defines "owner," in pertinent part, as "the person whose name last *appears as an owner of record* on any deed or instrument of conveyance recorded in the county office . . . ." 72 P.S. § 5860.102 (emphasis added). While Keller argues legal title to the Keller Properties passed to the MCTCB upon their placement in the repository of unsold property, Keller does not deny that he is the record owner of the Keller Properties, and he neither objected to the introduction of the MCTCB Report nor disputed its contents reflecting his ownership of the Keller Properties. Taxes are defined in Section 102 as "all taxes, with added interest and penalties, levied by a taxing district upon real property, including improvements." 72 P.S. § 5860.102. Taxes are considered delinquent under Section 102 "on December 31 of each calendar year for all taxing districts."[15] *Id.* The Keller Properties are currently held in the MCTCB's repository of unsold property because Keller neglected to pay the real estate taxes assessed thereon from 2007 through 2017. As Keller has not satisfied the real estate taxes owed, they cannot be considered anything but delinquent.

Beyond his misguided reliance on *Sprock*, Keller cites no legal authority – statutory or otherwise – for the proposition that his real estate tax delinquency was extinguished by virtue of the Keller Properties having been placed in the MCTCB's repository of unsold property. Indeed, Section 618(a)-(a.1) of RETSL provides that, while a property owner has no absolute right to purchase his own property at a judicial sale or from a repository of unsold property, a tax claim bureau may permit such a sale, provided the owner pays in full all delinquent taxes owed. 72 P.S. § 5860.618(a)-(a.1). Logic dictates that a record owner's real estate tax delinquencies

---

[15] The definition of "delinquent" was added to RETSL by the Act of December 21, 1998, P.L. 1008.

8

survive placement of the associated real property in a depository of unsold property, given that the record owner can redeem the property by extinguishing the tax debt.

Based on the facts before this Court, we simply cannot credit Keller's argument that he was not delinquent in paying real estate taxes on September 12, 2018, the date he filed his affidavits with the MCTCB in accordance with Section 619.1(a) of RETSL.

## B. Remedy

Next, we address whether the trial court erred in setting aside the sale of the Everett Properties where Section 619.1(a) of RETSL fails to provide such a remedy. Keller recognizes the requirement in Section 619.1(a) that the successful bidder at a tax sale must file a certification that he is not delinquent in paying real estate taxes. However, Keller argues, no penalty is prescribed should the bidder fail to file the required certification, or file a certification that is incorrect, and the trial court had no power to create one. In furtherance of his argument that a court should not create a remedy in Section 619.1(a) where the General Assembly has not seen fit to do so, Keller cites a trio of cases from this Court: *In re Rowan*, 763 A.2d 958 (Pa. Cmwlth. 2000); *Upset Sale of Properties Against Which Delinquent 1997 Taxes were Returned to the Tax Claim Unit, Fiscal Operations on or about Last Day of 1998; In re Petition of A&X Investment Co.* (*A&X*), 777 A.2d 532 (Pa. Cmwlth. 2001); and an unreported panel opinion, *Upset Tax Sale of September 11, 2009, Country Acres v. Wayne County Tax Claim Bureau* (*Country Acres*), (Pa. Cmwlth., No. 5 C.D. 2011, filed January 5, 2012), 2012 WL 8666729.

The object of statutory interpretation is to ascertain and determine legislative intent and to give effect to all provisions of a statute. *Pa. State Police, Bureau of Liquor Control Enforcement v. McCabe*, 644 A.2d 1270, 1272 (Pa. Cmwlth. 1993).

9

The primary purpose of RETSL is not to strip away a citizen's property rights but to ensure the collection of taxes. *In re Consol. Reports and Return by Tax Claims Bureau of Northumberland Cty. of Prop.*, 132 A.3d 637, 651 (Pa. Cmwlth. 2016) (internal citations omitted). RETSL is not meant to punish taxpayers who failed to pay their real estate taxes through oversight or error but to protect local governments from willful, persistent, long-standing delinquent taxpayers. *Id.*

The purchase of property at tax sale by a person who is himself delinquent in the payment of real estate taxes is clearly discouraged under RETSL. As previously discussed, Section 618(a.1) of RETSL provides that an owner may not purchase his own property at tax sale or from an unsold property repository unless he pays the delinquent taxes owed in full. 72 P.S. § 5860.618(a.1). Most critical to the instant matter, Section 619.1(a) of RETSL requires the successful bidder at a tax sale to certify he is not delinquent in paying real estate taxes to any of the taxing districts where the purchased property is located. 72 P.S. § 5860.619a(a).

The cases cited by Keller – *Rowan*, *A&X*, and *Country Acres*[16] – represent our limited jurisprudence evaluating the consequences of a successful bidder's failure to comply with the certification requirements of Section 619.1(a). Keller maintains these decisions support his argument that the lower court erred in creating a remedy under Section 619.1(a) when it set aside the tax sale of the Everett Properties.

The relevant facts of *Rowan* are as follows. The Rowans purchased the subject real estate five days prior to a tax sale of the property scheduled for October 13, 1999. *Rowan*, 763 A.2d at 959. The Rowans paid the outstanding taxes owed, unaware of the pending tax sale. *Id.* The tax claim bureau received the Rowans'

---

[16] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

check after the successful bidders, the Soberdash Brothers, purchased the property at the October 13, 1999 tax sale. *Id.* at 959 n.4. The Rowans filed exceptions to the tax sale and a hearing was held before the court of common pleas. *Id.* at 959. One of the Soberdash Brothers, Troy Soberdash, admitted during testimony that the certification required by Section 619.1(a) of RETSL had not been filed with the county tax claim bureau. *Id.* at 960. The director of the county tax claim bureau testified that a deed to the property would not be provided until the successful bidder presented the required certification. *Id.* at 961. The court of common pleas concluded that the Soberdash Brothers' failure to comply with Section 619.1(a) of RETSL precluded the tax claim bureau from transferring title to the Soberdash Brothers; accordingly, they had no enforceable interest in the property and no right to intervene in the exceptions filed by the Rowans. *Id.* at 960. This Court declined to address whether the Soberdash Brothers could have cured their failure to comply with Section 619.1(a), as that issue was not before us. *Id.* at 961.

The Soberdash Brothers conceded on appeal to this Court that it owned several properties at the time of the tax sale on which delinquent taxes were owed and that, by the date of the hearing on the Rowans' exceptions, they had not presented the county tax claim bureau with the certification required by Section 619.1(a) of RETSL. *Id.* at 961. This Court affirmed the court of common pleas, noting that, while Section 619.1(a) did not specify consequences should a successful bidder fail to file the certification, the certification was mandatory. *Id.* Having failed to satisfy this statutory prerequisite, the court of common pleas did not err in holding that the Soberdash Brothers had no enforceable interest in the property. *Id.*

The successful bidder in *A&X*, Anthony Malinowski, likewise failed to file the certification required by Section 619.1(a). *A&X*, 777 A.2d at 537. Malinowski

11

testified that, when previously purchasing properties at tax sale, he had never been asked to provide such a certification. *Id.* at 535. A supervisor for the county tax claim bureau testified that Section 619.1(a) certifications were not required from successful bidders at tax sales. *Id.* at 534. While Malinowski never provided the certification required by Section 619.1(a), Malinowski did remedy an existing tax delinquency soon after discovering its existence. *Id.* at 535. This Court recognized that, under *Rowan*, certification is mandatory under Section 619.1(a). *Id.* at 537. However, the General Assembly had not provided a consequence for a bidder's failure to file the required certification, and we were reluctant to create one. *Id.* at 538. In concluding that Malinowski's failure to file the certification under Section 619.1(a) did not affect the validity of his purchase of the subject property at tax sale, we were also guided by the principle in Section 1928(b)(3) of the Statutory Construction Act of 1972 that taxing statutes must be construed against the government and reasonable doubts about their application in a given matter must be resolved in favor of the taxpayer. *Id.*; 1 Pa.C.S. 1928(b)(3). While this decision appears to conflict with our ultimate conclusion in *Rowan*, it is notable that the tax claim bureau in *A&X* did not require a Section 619.1(a) certification from Malinowski, whereas the tax claim bureau in *Rowan* presented evidence that it would not provide a deed until it received the Section 619.1(a) certification.

Finally, in *Country Acres*, the successful bidder filed a Section 619.1(a) certification asserting he had no other delinquent real estate taxes. Slip op. at 1. It came to light that he was mistaken, but the bidder rectified his mistake by promptly satisfying his delinquent tax obligations. *Id.* A three-judge panel of this Court concluded the tax sale should not be set aside because 1) the language of Section 619.1(a) provided no remedy for a violation of the certification requirement, 2) as a

12

taxing statute, Section 619.1(a) should be strictly construed against the government, and 3) the bidder filed a certification based on his reasonable belief that he was not delinquent in the payment of real estate taxes and *he cured the delinquency as soon as he learned of it*. *Id.* at 4. The panel distinguished this Court's decision in *Rowan* because that matter involved a petition to intervene which required the successful bidders establish an enforceable interest in the property. *Id.* at 3. The bidders in *Rowan* had not obtained a deed from the tax claim bureau or otherwise satisfied, in any manner, the requirements of Section 619.1(a). *Id.* Moreover, the *Rowan* Court had not addressed whether a successful bidder could cure an incorrect certification under Section 619.1(a). *Id.*

In summary, the bidders in *Rowan* had no enforceable interest in the subject property where they filed no Section 619.1(a) certification and failed to satisfy the outstanding tax obligation, and the tax claim bureau presented evidence that no deed could be conveyed in such circumstances. The tax sale in *A&X* was upheld despite the bidder's failure to file a Section 619.1(a) certification, as he paid his outstanding real estate tax obligation when he learned of it. Notably, the tax claim bureau in *A&X* did not require the successful bidder file a Section 619.1(a) certification. The bidder in *Country Acres* filed a Section 619.1(a) certification, which he later learned was incorrect, but he rectified the error and satisfied the delinquent taxes.

The primary purpose of RETSL is to ensure the collection of taxes. The specific provisions of RETSL at issue in the present matter discourage the purchase of property at tax sale by property owners who are likewise delinquent in paying their real estate taxes. It defies logic that the General Assembly would create a legislative scheme requiring the successful bidder in an upset sale to certify he is not

13

delinquent in the payment of real estate taxes but permitting the sale to go forward, regardless of the certification's validity.

In *A&X* and *Country Acres*, the purpose of Section 619.1(a) was fulfilled, as the real estate tax delinquencies were satisfied once the successful bidders were made aware of their existence. Those tax sales were permitted to go forward. In *Rowan*, the purpose of Section 619.1(a) was not fulfilled because the successful bidder's prior tax obligations were not met.

Here, we are presented with Keller, a successful bidder who not only filed an incorrect Section 619.1(a) certification but also failed to subsequently satisfy the delinquent taxes admittedly owed on the Keller Properties. Keller's situation is akin to the bidders in *Rowan*. Both the tax claim bureau in *Rowan* and the MCTCB require a successful bidder file a certification under Section 619.1(a) of RETSL. The bidders in *Rowan* failed to file such a certification and admitted they had real estate tax delinquencies, which ultimately left them without an enforceable interest in the subject property. Keller's technical compliance with the certification requirements of Section 619.1(a) is rendered ineffectual by his failure to later rectify the real estate tax delinquency associated with the Keller Properties. Our prior decisions correctly recognized that Section 619.1(a) does not set forth any consequences should the successful bidder fail to fulfill his statutory duty. However, we are also guided by Section 1922(2) of the Statutory Construction Act and recognize that courts may not interpret a statute in such a manner that results in an absurd, unreasonable or unintended result. 1 Pa.C.S. § 1922(2). We must also presume that the General Assembly intends the entirety of RETSL to be effective and certain. 1 Pa.C.S. § 1922(2).

Sanctioning a real estate tax scofflaw's purchase of real property at tax sale without requiring he first satisfy his own tax debt violates the very premise of RETSL and would effectively render Section 619.1(a) a nullity. We therefore conclude the trial court did not err in setting aside Keller's purchase of the Everett Properties based on his failure to satisfy his delinquent real estate taxes.

## IV. Conclusion

Keller's argument that he is not delinquent in the payment of real estate taxes is belied by his own admissions and the evidence introduced at the April 29, 2019 hearing before the trial court. Keller's failure to satisfy the delinquent real estate taxes owed on the Keller Properties and comply with the certification requirements in Section 619.1(a) of RETSL disqualifies him from purchasing the Everett Properties at an upset tax sale. Accordingly, we affirm the trial court's order setting aside the September 12, 2018 upset tax sale.

_____
ELLEN CEISLER, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: 2018 Upset Tax Sale | : | |
| | : | |
| Lorraine S. Everett | : | |
| | : | |
| v. | : | No. 1171 C.D. 2019 |
| | : | |
| Monroe County Tax Claim Bureau, | : | |
| David Keller and Paul W. Jenkins | : | |
| | : | |
| Appeal of: David Keller | : | |

# **O R D E R**


AND NOW, this 9th day of June, 2020, the July 8, 2019 order of the Court of Common Pleas of Monroe County is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge
