# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jay R. Brown,                                    :
               Appellant                  :
                                :
        v.                                       :        No. 754 C.D. 2017
                                :        ARGUED:  December 4, 2017
Chester County Tax Claim                         :
Bureau and Chester County                        :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                      **FILED:  January 29, 2018**

       Jay R. Brown (Brown) appeals from an order of the Court of Common Pleas of Chester County (trial court) that denied his post-trial motions from an order entering judgment in favor of the Chester County Tax Claim Bureau (Bureau) and Chester County in his declaratory judgment action seeking to resolve the parties' respective rights as to a manufactured home situated on Brown's real estate.  We affirm.

       Brown owns real property located at 212 E. Summit Avenue, West Grove, Chester County, which Arturo Arevalos Santoyo leased for placement of his manufactured home (the Subject Home).  When Santoyo became delinquent in paying taxes on the Subject Home, the taxing districts filed liens pursuant to the Real Estate Tax Sale Law (Tax Sale Law).[1]  (February 3, 2017, Trial Court Opinion, Findings of Fact (F.F.) Nos. 4, 5, and 7.)  In 2012, the Bureau initiated statutory

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101 - 5860.803.

procedures for the collection of unpaid taxes by upset tax sale. Santoyo was present at the property in August 2012 when he was personally served. Service was also made by posting the Subject Home and by publication. (*Id*., Nos. 8 and 9.) Although the Subject Home was exposed at a September 2012 upset tax sale with an upset price of $8,750.21, no bids were received. (*Id*., Nos. 11 and 12.) Santoyo vacated the Subject Home in December 2012, leaving it situated on Brown's real property. (*Id*., No. 13.)

In December 2014, Brown provided Santoyo with a notice of abandonment pursuant to the Manufactured Home Community Rights Act (Manufactured Home Act).[2] Brown also sent copies of the notice to the taxing authorities, including the Bureau. (*Id*., Nos. 14 and 15.) The Bureau's director responded to the notice, stating, in pertinent part, as follows:

> You may not be aware that the property/parcel was exposed with no bids received at the 9/10/2012 Upset Tax Sale. Once a property is exposed at an upset sale and no bids are received, there is no right of redemption. Therefore, any subsequent action to transfer title or declare the property abandoned by Jay Brown and/or Janet Brown, their agents, a manufactured home property management company or any other lien holder is a nullity.
>
> The property is currently in judicial tax sale preparation status and will be exposed at a future judicial tax sale.

(Director's January 5, 2015, Letter, Defendant's Exhibit 1; Supplemental Reproduced Record (S.R.R.) at 1.)

Notwithstanding the Bureau's correspondence, Brown filed an action pursuant to the Manufactured Home Act in his magisterial district captioned "Janet Brown, Jay Brown v. Arturo Arevalos Santoyo." (F.F. No. 18.) In April 2015, a

---

[2] Act of November 24, 1976, P.L. 1176, *as amended*, 68 P.S. §§ 398.1 - 398.10.3.

2

Magisterial District Justice (MDJ) determined that Santoyo had abandoned the Subject Home and entered a money judgment in the amount of $7,646.80 against him.[3] (*Id.*, No. 17.) Consequently, pursuant to the Manufactured Home Act, Brown arranged for an auction of the Subject Home. Brown bid $5,000 at the July 2015 auction and the funds were distributed to him pursuant to the money judgment. (*Id.*, No. 20.)

Subsequently, the Bureau refused to certify the Subject Home as free and clear from all tax liability pursuant to the MDJ's determination of abandonment. Specifically, it persisted in asserting its claim to outstanding taxes or liens on the Subject Home and in refusing to recognize Brown's ownership claim. In turn, Brown maintained that he owned the Subject Home and that, pursuant to the Manufactured Home Act, the Bureau was not entitled to enforce its claim. Consequently, Brown commenced his July 2015 declaratory judgment action in common pleas court seeking the following findings and determinations:

> A. Brown has satisfied the terms of the [Manufactured Home Act], and the disposal and/or sale of the [Subject Home] is lawful.
>
> B. County may not assert a claim or opinion that the implementation of the Abandonment is a "nullity" under the Tax [Sale Law].
>
> C. The Purchaser of the [Subject Home] . . . and Brown, as the owner of the real property on which [it] is located are not liable for any unpaid taxes or liens on [it].
>
> D. County may not impose any restriction, obligation on the manufactured home community, community owner, purchaser or any new tenant or resident

---

[3] Section 10.1 of the Manufactured Home Act, 68 P.S. § 398.10.1, entitled "determination of abandonment," was added by Section 2 of the Act of October 24, 2012, P.L. 1267, and became effective on December 24, 2012. As the trial court observed, the effective date was subsequent to the September 2012 upset tax sale. (Trial Court's May 24, 2017, Order at 2 n.1.)

attempting to locate or lease [the] above described home because of tax liability on [it]. County shall not refuse to issue or delay issuing any permits, licenses or other required approvals for the occupancy of this home or lot.

E. Liability for any taxes assessed and imposed on the resident or liability to satisfy any lien for such taxes shall continue to be the responsibility of the resident and shall not be assessed and imposed on the real estate on which the [Subject Home] was or is located, the manufactured home community or the purchaser of the [Subject Home], all of which is as provided for in [The General County Assessment Law[4]].

(July 27, 2015, Complaint-Declaratory Judgment, Wherefore Clause at 5.)

Following a non-jury trial, the trial court ordered that judgment be entered against Brown. In February 2017, Brown filed post-trial motions and a notice of appeal with our Court. In May 2017, we quashed Brown's appeal at 194 C.D. 2017 and remanded the matter to the trial court to rule on the post-trial motions. Following its denial of Brown's post-trial motions, the trial court entered judgment in June 2017. Brown's appeal after remand is now before us.

Reorganized and reworded for clarity, the cognizable issues before us are as follows: (1) whether the trial court erred in determining that the Manufactured Home Act was inapplicable to the Subject Home after its exposure at the unsuccessful upset tax sale conducted pursuant to the Tax Sale Law; (2) whether the trial court erred in determining that the Bureau did not improperly divest claims protected under the nondivestiture of liens provision found in Section 609 of the Tax Sale Law, 72 P.S. § 5860.609, including claims for ground rent, after the upset tax sale but before any judicial sale; and (3) whether the trial court erred in determining that the loss of an owner's right of redemption after an upset tax sale pursuant to

_____

[4] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020-1 - 5020-602.

4

Section 501(c) of the Tax Sale Law, 72 P.S. § 5860.501(c),[5] divested claims against the property that are protected under Section 609's nondivestiture provision.[6]

In order to provide a framework for our analysis, we recite the following provisions of the Tax Sale Law. The provision pertaining to fixing an upset sale price and providing for what must occur in the absence of a bid equal to that price, in pertinent part, provides:

### Upset sale price

No sale of property shall be made by the bureau unless a bid equal to the upset price is made. If no bid equal to the upset price is received, the sale shall be continued without further advertisement in order to give the bureau a chance to sell the property at private sale, or to petition court for an order to sell the same, freed and discharged of all liens as hereafter provided. No upset sale may be continued beyond the end of the calendar year, and no property may be sold at private sale or judicial sale unless the property has first been exposed to upset sale and was not sold at upset sale.

---

[5] Although Brown identifies this section as Section 503(c) in his statement of issues, it appears from the remainder of his brief that he meant to say Section 501(c). (*See* Brown's Brief at 11 and 16.)

[6] Brown also posits an issue as to whether the trial court erred in determining that the Bureau was not required to provide proof that public notice of the upset tax sale was provided to all "owners of properties described in this notice *and to all persons having liens, judgments or municipal or other claims against such properties.*" Section 602(d) of the Tax Sale Law, 72 P.S. § 5860.602(d) (emphasis added). However, Brown waived any issue pertaining to defective notice or lack thereof regarding the upset tax sale by failing to raise it in his request for declaratory relief.

In any event, Brown asserted that Santoyo complied with the terms of his lease until on or about December 2012, at which time he vacated the Subject Home without notice and in breach of his lease. (July 27, 2015, Complaint-Declaratory Judgment at ¶ 8; Brown's Brief at 7.) In this regard, the trial court observed: "Based on the ruling that [Brown] received from the [MDJ], rent arrears began to accrue in or about October, 2013." (Trial Court's May 24, 2017, Order at 2 n.1.) These dates are somewhat in contradiction to Brown's statement in another portion of his brief that his right to a claim existed at the time of the September 2012 upset tax sale. (Brown's Brief at 18.) Having a right to a claim is different from having an actual claim.

5

Section 605 of the Tax Sale Law, 72 P.S. § 5860.605. Accordingly, following the Subject Home's exposure at the upset tax sale in the present case, one of the Bureau's options would have been to petition for a judicial sale.

A judicial sale is a ministerial function of a non-judicial governmental unit. *In re: Tax Sale Pursuant to the Real Estate Tax Sale Law of 1947, Appeal of: Cathy Holler*, 8 A.3d 358, 364 (Pa. Cmwlth. 2010). Two provisions pertaining to such sales, in pertinent part, provide:

### Petition for judicial sale

In cases where the upset price shall not be bid at any such sale, the sale shall be continued, but not beyond the end of the calendar year, without further advertising, and the bureau may, at any time during or after the continuance, and shall, immediately at the written direction of a taxing district, file its petition in the court of common pleas . . . to sell the property under sections 612 [judicial sale] and 612.1 [county commissioners' ability to bid and purchase property]. . . . Upon the presentation of such petition, accompanied with searches showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgage, ground rents, charges and estates against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents.

Section 610 of the Tax Sale Law, 72 P.S. § 5860.610. The second provision provides:

### Mandatory judicial sale

If within the period of ten (10) months after the date of the scheduled upset sale, the bureau has not filed a petition for a judicial sale under section 610 or the property has not been sold at private sale, the bureau shall, within the next immediately following two (2) months, file

6

> a petition for judicial sale of the property in the manner set forth in section 610.

Section 616 of the Tax Sale Law, 72 P.S. § 5860.616.[7] Having set forth the relevant statutory framework, we turn now to the applicability of the Manufactured Home Act after the Subject Home's exposure at the upset tax sale.

For at least two reasons, we conclude that the trial court correctly determined that the Manufactured Home Act was inapplicable to the Subject Home after its exposure at the upset tax sale. First, our Pennsylvania Supreme Court has held:

> When a tax sale is commenced under a particular Act of Assembly, the procedure therein prescribed must be followed and under that act alone must the validity and

---

[7] Although the Bureau advised Brown that the Subject Home was in "judicial tax sale preparation status," it had not yet petitioned for a judicial sale. Further, once Brown filed his declaratory judgment action, it decided to delay initiating judicial sale proceedings due to the pendency of that action. (F.F. No. 22.) At any rate, although the Bureau's delay in pursuing a judicial sale commensurate with the Tax Sale Law is concerning, Brown asserted only that it had not yet conducted a judicial sale, not that its failure to do so was problematic. (*See* July 27, 2015, Complaint –Declaratory Judgment, ¶ 18.) Nonetheless, we find it sufficiently troubling to touch upon the law regarding delay in initiating judicial sales.

In a case where the petition for judicial sale was filed more than eight years after the date of the scheduled upset sale, we determined that the ten-month provision in Section 616 was directory and not mandatory. *In re: Sale of Real Estate by Lackawanna Cty. Tax Claim Bureau*, 22 A.3d 308, 315 (Pa. Cmwlth. 2011). In so concluding, we observed the following:

> Section 616 contains no provision barring judicial sale more than one year after an unsuccessful upset sale, and we have found no case law addressing whether [it] prohibits the judicial sale of property after more than one year has passed from the date of the unsuccessful upset sale. Also, although [it] directs that a judicial sale "shall" be conducted within a year of the upset sale, [it] does not provide a specific consequence for failure to [do so] within that time period.

*Id*. at 314-15. Accordingly, we surmised that the mandatory judicial sale provision was "enacted to impose a mandatory judicial sale, which could be enforced by the interested party through a writ of mandamus to compel the Bureau to act pursuant to Section 616." *Id*. at 315.

7

> effect of the sale be tested. *Other legislation providing a different procedure or result cannot be used either to sustain such sale or secure additional rights or results.* The act under which the proceeding is had must show the authority and the effect of such a sale.

*Pacella v. Washington Cty. Tax Claim Bureau*, 10 A.3d 422, 429-30 (Pa. Cmwlth. 2010) (emphasis added) (quoting *Gordon v. Harrisburg*, 171 A. 277, 278 (Pa. 1934)). As applied to the taxpayer in *Pacella*, the effect of the Supreme Court's holding was that he could not use what is commonly known as the Municipal Claims and the Tax Liens Act[8] to exercise a right to redeem his residential real property following an upset sale for tax delinquency held pursuant to the Tax Sale Law.

By way of analogy to the present case, Brown could not use the Manufactured Home Act to exercise any rights regarding the Subject Home following the Bureau's commencement of proceedings under the Tax Sale Law pertaining to that property. *See also Richards v. Schuylkill Cty.*, 161 A.2d 26 (Pa. 1960) (holding that, where a county has accepted in its entirety the provisions of the Tax Sale Law, it becomes the exclusive authority governing that county's sale of land for taxes). Accordingly, after the exposure of the Subject Home at the upset tax sale under the Tax Sale Law, the Manufactured Home Act was inapplicable.[9]

Second, Brown improperly employed the Manufactured Home Act in his magisterial action against former owner Santoyo because, by that time, the

---

[8] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101 - 7505.

[9] At oral argument before this Court, counsel for the Bureau acknowledged that the Bureau had permitted manufactured home park owners to proceed under the Manufactured Home Act before upset tax sales. (*See also* January 26, 2017, Hearing, Notes of Testimony (N.T.) at 26-27; Reproduced Record (R.R.) at 32-33a.)

8

transfer of ownership from Santoyo to the Bureau had already occurred.[10]  As this Court has held:

> [I]t is clear that a tax claim bureau must become trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee, at that time, which is the most appropriate time for that to happen because the owner's right of redemption at that time is extinguished.

*Commonwealth v. Sprock*, 795 A.2d 1100, 1102 (Pa. Cmwlth. 2002).

Moreover, as was the case in *Sprock*, this transfer occurs even in the absence of a sale at an upset tax sale.  *In re: Balaji Invs., LLC.*, 148 A.3d 507, 512 (Pa. Cmwlth. 2016), *appeal denied*, 168 A.3d 1293 (Pa. 2017); *Pacella*, 10 A.3d at 428 n.8.  Whatever rights and legal title Santoyo held in the Subject Home, therefore, were transferred to the Bureau by operation of law after the 2012 upset tax sale. Accordingly, we conclude that Brown's action before the MDJ subsequent to that sale was a nullity in that Santoyo was no longer the legal owner of the Subject Home and, therefore, could not be deemed to have abandoned it as a matter of law.  Two cases also support our holding.

In *Bankers Trust Co. v. Tax Claim Bureau of Delaware County*, 723 A.2d 1092 (Pa. Cmwlth. 1999), after an unsuccessful upset tax sale but before a successful judicial sale, Bankers Trust as the foreclosing creditor purchased the subject property at a sheriff's sale.  In ruling that the trial court did not err in dismissing Bankers Trust's petition to set aside the judicial sale, we observed that "the property was taken in by the county" after the unsuccessful upset tax sale.  *Id*.

---

[10] We are troubled by the MDJ's consideration of the matter pursuant to the Manufactured Home Act where Brown failed to name the Bureau as the trustee and legal owner of the Subject Home.

9

at 1094. Accordingly, noting that the bureau provided proper notification to Bankers Trust of the scheduled judicial sale, we concluded that any loss that the creditor incurred as a result of the judicial sale was "a result of its own failure to take reasonable steps to protect its interest in the Property." *Id*. at 1095. In other words, the intervening sheriff's sale was rendered a nullity, in large part, due to the transfer of the property to the bureau after the upset tax sale.

The second case is *Sprock*, wherein we considered the issue of whether the Sprocks were responsible for failing to comply with an ordinance affecting the maintenance of their former property following an unsuccessful upset tax sale. Notwithstanding the fact that the deed remained in their names, we held that they were not required to comply with the ordinance because the bureau had gained control of the property as trustee subsequent to the upset tax sale. *Sprock*, 795 A.2d at 1104. In other words, after the transfer of ownership to the bureau, the municipality could not hold the Sprocks responsible under the ordinance.

Accordingly, once the Subject Home in the present case was exposed at the upset tax sale and the Bureau assumed legal ownership under the Tax Sale Law, Brown could not sue the former owner of that property under the Manufactured Home Act and usurp the role of the Bureau as trustee and legal owner as established under the Tax Sale Law. Having so concluded, we turn now to Brown's second issue concerning the nondivestiture of liens after the unsuccessful upset tax sale.

Brown maintains that the Bureau improperly attempted to divest claims before a mandatory judicial sale that are protected by virtue of the nondivestiture of liens provision found in Section 609 of the Tax Sale Law. Specifically, he maintains that his rights and remedies set forth in the Manufactured Home Act, including any

10

claims for ground rent, are included in Section 609 and cannot be divested after either an upset tax sale or a judicial sale. Section 609 provides:

**Nondivestiture of liens**

> Every such sale shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien not included in the upset price with which said property may have or shall become charged or for which it may become liable.

As the trial court concluded, however, because the upset tax sale did not result in the actual sale of the Subject Home, it did not result in the divestiture of any liens or claims. An "actual sale" is defined as follows: "[P]ayment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser at upset sale under sections 605 through 609." Section 102 of the Tax Sale Law, 72 P.S. § 5860.102. It is unnecessary at this stage of the proceedings, therefore, to address an allegedly improper divestiture. Similarly, any issue concerning "ground rent" is not before us here.[11] We turn now to Brown's third issue regarding the effect of the loss of an owner's right of redemption under Section 501(c) of the Tax Sale Law on the nondivestiture provision found in Section 609.

Section 501 is entitled "discharge of tax claims" and subsection (c) provides: "There shall be no redemption of any property after the actual sale

---

[11] In 2012, our Supreme Court, *inter alia*, pondered the inclusion of ground rent with other types of real estate listed in Section 201(a) of the General County Assessment Law, 72 P.S. § 5020-201(a). It reiterated that "ground rent is considered an interest in land, and, hence, is a particular form of real estate; thus, its inclusion with other types of real estate listed in Section 201(a) is unremarkable." *Tech One Assocs. v. Bd. of Prop. Assessment*, 53 A.3d 685, 698 n.25 (Pa. 2012). Further, it contrasted lease payments, stating that they were a contractual obligation and not specific kinds of real estate subject to taxation. Although Brown in the present case may be improperly equating ground rent with the contractual lease payments that he charged Santoyo for placing the manufactured home on the real estate, the proper construction of "ground rent" is not before us at this time.

11

thereof." 72 P.S. § 5860.501(c). Acknowledging that Section 501(c) eliminates an owner's right to redeem property after an actual sale, Brown maintains that the provision provides no authority for removal of claims or liens preserved under the nondivestiture provision found in Section 609. In that regard, he maintains that Section 501 was improperly construed in the present case to provide that, subsequent to an unsuccessful upset sale, there is no right of redemption *and* any action to transfer the property or declare it abandoned constitutes a nullity. In addition, he maintains that, because a sale occurs at the time of the upset auction, Section 609 is not affected or conditioned upon an owner's loss of redemption.

As previously noted, there was no actual sale of the Subject Home as defined in Section 102 of the Tax Sale Law. Moreover, a judicial sale engenders all of the attendant searches and due process that the General Assembly saw fit to provide in the judicial sale provisions.[12] Accordingly, whether or not the former owner of the Subject Home, Santoyo, could redeem it after it became subject to the process outlined in the Tax Sale Law, *i.e.*, the upset tax sale, there has been no divestiture of liens or claims attendant to or subject to the unsuccessful upset tax sale.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[12] As noted, Section 610 of the Tax Sale Law provides that, upon the presentation of a petition for judicial sale, "accompanied with searches showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgage, ground rents, charges and estates against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents."

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jay R. Brown,                                          :
          Appellant                          :
                                :
          v.                                      :   No. 754 C.D. 2017
                                :
Chester County Tax Claim                     :
Bureau and Chester County                    :

# O R D E R

AND NOW, this 29th day of January, 2018, the order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

 

                                      _____

                                      **BONNIE BRIGANCE LEADBETTER,**
                                      Senior Judge